**Richard Sax (SBN 80632)** *richard@rsaxlaw.com*
**LAW OFFICES OF RICHARD SAX**
P.O. Box 1236
Santa Rosa, CA 95402
Telephone: (707) 525-1824
Facsimile:  (707) 525-8119

Attorney for Plaintiff,
Melissa Lansdown

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELISSA LANSDOWN,<br><br>                Plaintiff,<br><br>v.<br><br><br>BAYVIEW LOAN SERVICING, LLC; SHELLPOINT LOAN SERVICING, LLC, and Does 1-10, inclusive,<br><br>                Defendants, | CASE NO.:<br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL DEBT COLLECTION PROTECTION ACT (FDCPA); VIOLATION OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT (RFDCPA); INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; BREACH OF CONTRACT and DAMAGES** |

        COMES NOW plaintiff, Melissa Lansdown (hereinafter referred to as "Plaintiff" or "Lansdown"), who avers the following:

### JURISDICTION

1.      This Court has jurisdiction over the subject matter of this Complaint and the causes of action asserted herein, because the wrongful actions complained of arose in Sonoma County and other counties within the State of California. The Defendants, and each of them, have conducted business in Sonoma County, and continue to have a presence and minimum contacts in Sonoma County, California. The deed of trust which is the subject of this actin provides: **Section 16. Governing Law**. "This Security Instrument shall be governed by federal law and the law of the jurisdiction in which

the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law."

## VENUE/INTRADISTRICT ASSIGNMENT

2.     Venue is proper in the San Francisco branch of this Court, pursuant to 28 U.S.C. § 1391(b)(2) and local rules, because a substantial part of the events or omissions giving rise to this claim occurred, or a substantial part of property that is the subject of the action, is situated there.

## PARTIES

3.     At all times mentioned herein, plaintiff Melissa Lansdown (hereinafter "Plaintiff") was, and is, an individual residing in the City of Healdsburg, County of Sonoma, State of California; and the owner in fee of real property and improvements located at and commonly known as 1670 Chiquita Road, Healdsburg, California 95448, Assessor's Parcel Number 091-120-040-000 (the subject "Real Property"), which is more particularly described in the Deed of Trust dated April 25, 2001 recorded in the Official Records of Sonoma County on May 3, 2001, as instrument Number 2001055033, attached to this Complaint as **Exhibit 1**.

4.     At all times mentioned in this Complaint, defendant BAYVIEW LOAN SERVICING, LLC ("Bayview"), is a national loan servicing company with an entity address in Coral Gables, Florida, and jurisdiction in Delaware. Bayview is an entity licensed to do business in California, with an agent for service of process, Corporation Service Company, which will do business in California as CSC— Lawyers Incorporating Service (C1592199).   At all relevant times, Bayview was the servicer of Plaintiff's loan until it transferred the servicing of the loan to Shellpoint on February 1, 2020.  Mortgage loan servicers, as enforcers of security interests, fall within the definition of debt collectors.

5.     Shellpoint Loan Servicing, LLC ("Shellpoint") is a loan servicer licensed to do

2

1  business in California, which assumed the servicing of Plaintiff's loan on February 1,
2  2020. Mortgage loan servicers, as enforcers of security interests, fall within the
3  definition of debt collectors.

4  6.      Plaintiff designates all persons unknown claiming any interests in the real
5  property as Defendants DOES 1 through 50, inclusive.  Plaintiff is ignorant of the
6  true names, capacities, or basis for liability of defendants sued as DOES 1 through 50,
7  and therefore sues defendants by such fictitious names. DOES 1 through 50 are in
8  some manner liable to Plaintiff, or claim some right, title, or interest in the subject
9  Real Property, or both.  Plaintiff will amend this Complaint to allege their true names
10 and capacities when ascertained.

11 7.      Plaintiff is informed and believes and thereon alleges that, at all times herein
12 mentioned, does 1 through 50 were the agents and employees of Defendants, and, in
13 doing the things herein described and referred to, were acting within the course and
14 scope of their authority as such agents and employees, and in the transaction of the
15 business of the employment or agency. Defendants are, therefore, liable to Plaintiff
16 for the acts of Does 1 through 50 as herein alleged.

17 8.      Plaintiff is informed and believes and thereon alleges that, in doing the acts
18 as herein alleged, Defendants knew, or in the exercise of reasonable diligence
19 should have known, that Defendants Does 1 through 50 were incompetent and
20 unfit to perform the duties for which they were employed, and that an undue risk
21 to persons such as Plaintiff would exist because of the employment.

22 9.      Defendants, their agents and employees, and their officers, directors, and
23 managing agents, have a duty of due care in the hiring, training, and supervision of
24 employees. Defendants, their agents and employees, and their officers, directors,
25 and managing agents, have a further duty of due care to investigate the
26 background of their employees, especially in light of the particular risk or hazard
27 that the breach of that duty poses to customers within their care.

28

3

10.     Defendants, their agents and employees, and their officers, directors, and managing agents, knew, or had reason to know, that their employees and agents, including Does 1-50, because of their qualities, were likely to harm customers.

11.     Defendants, their agents and employees, and their officers, directors, and managing agents, failed to exercise due care in the interviewing, selection, training and supervision of their employees and agents, such that their employees and agents, including Does 1-50, were likely to harm customers.

12.     Defendants, their agents and employees, and their officers, directors, and managing agents, knew, or had reason to know, that their employees and agents had a history of or propensity to fail to use due care, such that their employees and agents, including Does 1-50, were likely to harm customers.

13.     Plaintiff is informed and believes and thereon alleges that Defendants, after being informed of the actions of Does 1 through 50, did not fully investigate and failed to repudiate and ratified the employees' conduct by redressing the harm done, let the transactions proceed, and retained the employees in employment.

14.     Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, each Defendant sued herein in relation to the Real Property they claim an interest in was the agent and/or employee of each of the remaining Defendants thereof, and at all times was acting within the purpose and scope of such agency and/or employment. All Defendants have joint and several liability.

15.     Whenever in this Complaint an act or omission of a corporation, partnership or other business entity is alleged, the allegation shall be deemed to mean and include an allegation that the corporation, partnership or other business entity acted or omitted to act through its authorized officers, directors, agents, servants and/or employees, acting within the course and scope of their duties, that the act or omission was authorized by the officers and directors of the corporation or business entity.

COMPLAINT FOR VIOLATION OF THE FEDERAL DEBT COLLECTION PROTECTION ACT (FDCPA); VIOLATION OF
THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT (RFDCPA); NEGLIGENT INFLICTION OF
EMOTIONAL DISTRESS and DAMAGES

## COUNT I

### Violation of Federal Debt Collection Protection Act

### Lansdown v. Bayview

16.     Plaintiff realleges and incorporates by reference paragraphs 1 through 15, inclusive, as though fully set forth in this action.

## FACTUAL BACKGROUND

17.     On April 25, 2001, Plaintiff and Ellis Greenberg ("Greenberg") signed a promissory note and deed of trust (in the amount of $375,000.00).  **(Exhibit 1.)**

18.     Greenberg was a co-borrower on the loan with Plaintiff.  On or about 2003, Greenberg executed a Quit Claim Deed of his interest in the real property to Plaintiff.  The Quit Claim Deed was recorded.  **(Exhibit 2).**

19.     Ever since the Quit Claim Deed was executed by Greenberg and recorded by Plaintiff, Bayview dealt directly and only with Plaintiff.

20.     Bayview has been attempting to foreclose on Paintiff's real property since on or about February 18, 2010.  Plaintiff has never been in default in payments on the deed of trust.

21.     Plaintiff performed in good faith and to her detriment, striving to make timely monthly payments of approximately $2,622.05. However, her performance of the mortgage contract was hindered by mushrooming illegal fees and late charges imposed by Full Spectrum, which weakened her ability to make the loan terms.

22.     On or about November 1, 2009, Plaintiff fell behind in her mortgage payments due to Bank of America falsely inducing her to skip mortgage payments in order to qualify for a loan modification.

**23.**     When Plaintiff began to experience difficulty making mortgage payments in November of 2009, she contacted the Bank of America to inquire about relief. Plaintiff was told by a representative of Bank of America that as a Countrywide

borrower, she had to be three months' behind in mortgage payments to qualify for a loan modification.

24.     On or about January 15, 2010, Plaintiff contacted the Bank of America anyway, offering to make payments to bring her loan current. The bank's agent had a heavy accent so his name was unclear to Plaintiff, but he insisted that she refrain from making payments while she was being evaluated for a mortgage modification. The bank's agent told Plaintiff that this was a benefit to borrowers, and he refused to take any payments from her. The agent told Plaintiff that she was accepted into the Homeowner Retention Program over the phone and should await the application paperwork. The Bank of America knew, or should have known, that its investor had not given them the contractual authority to modify Plaintiff's loan at all.

25.     On February 18, 2010, a Notice of Default was recorded against Plaintiff's Real Property. Recontrust Company, N.A., acted as an agent for MERS, the beneficiary. The creditor was named as "The Bank of New York Mellon fka The Bank of New York, as Trustee for Benefit of the Noteholders CWABS, Inc. Asset-Backed Notes, Series 2006-SD2" in care of BAC Home Loans Servicing, LP.

26.     Plaintiff filed a lawsuit in the Sonoma County Superior Court against Bayview and the Bank of America SCV-258462. Plaintiff sought injunctive relief and damages.    During the underlying litigation, Bank of America demanded that Greenberg be added as a Real Party in Interest to the underlying litigation. Greenberg's default was taken in the underlying action.    In good faith and because Plaintiff wanted to remain in her long-time residential home, Plaintiff attempted to resolve the litigation with Bayview and Bank of America by way of a Memorandum of Understanding dated December 19, 2018.    Bayview and Bank of America waived the right to enforce any conditions regarding Greenberg.    Greenberg's name is not mentioned anywhere as a signator, nor are there any conditions requiring Greenberg to sign the document.    Greenberg is elderly, retired, and has no assets.    The

COMPLAINT FOR VIOLATION OF THE FEDERAL DEBT COLLECTION PROTECTION ACT (FDCPA); VIOLATION OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT (RFDCPA); NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS and DAMAGES

1   Memorandum of Understanding called for a monthly payment of $2383.79, and
2   referred to escrow as a separate component. **Exhibit 3.**

3   27.   Bayview did not prepare the Confidential Settlement Agreement and Loan
4   Modification Agreement until January 28, 2019.   The Confidential Settlement
5   Agreement and proposed Loan Modification were different in significant respects
6   from the Memorandum of Understanding, so they are not enforceable. **Exhibit 4**.

7   28.   The Confidential Settlement Agreement and Loan Modification Agreement
8   was substantively unconscionable, because it included amounts of money that were
9   not owed – overcharging principal, foreclosure charges, property tax that were
10  capitalized into the principal, so that Plaintiff was paying interest on money not
11  owed.  $19,000 of real property taxes Plaintiff had paid had not been credited to her.
12  The Confidential Settlement Agreement required Greenberg's signature, which had
13  not been previously agreed upon.  The proposed agreement involved surprise as the
14  terms were changed afterward, and because of complex provisions with technical
15  jargon. Those terms were also deceptive as they stated the interest rate was 4.79%,
16  when it was 9.7%.

17  29.   Plaintiff made payments according to the Memorandum of Understanding.
18  Payments for February and March of $2,328.73 each were made by Plaintiff, in
19  compliance with the Memorandum of Understanding. **Exhibit 5**.

20  30.   When Plaintiff's objections to the proposed settlement agreements were
21  rejected and made futile, she signed the Confidential Settlement Agreement and
22  made the April payment in the amount of $2,898.79.  On April 3, 2019, she signed
23  and sent in the Confidential Settlement Agreement. **Exhibit 6.**

24  31.   On April 25, 2019, Brad Klein, the Bayview attorney, sent Plaintiff's attorney,
25  Richard Sax, an email giving Plaintiff six (6) days to meet his demands.  A copy of
26  the email is attached as **Exhibit 7.**  As the delay was caused by Bayview and changes
27  in the terms and conditions, and the alleged nonpayment was due to the return of

28

COMPLAINT FOR VIOLATION OF THE FEDERAL DEBT COLLECTION PROTECTION ACT (FDCPA); VIOLATION OF
THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT (RFDCPA); NEGLIGENT INFLICTION OF
EMOTIONAL DISTRESS and DAMAGES

1  Plaintiff's checks for February and March, there had not been a material breach by

2  Plaintiff, nor was there a right to demand a cure by Bayview.

3  32.    On May 13, 2019, Plaintiff sent in the executed Loan Modification Agreement

4  and payments in the amount of $11,864.00 for the months of February through May,

5  which Bayview has failed to credit to her account.  Plaintiff made seven payments

6  for the months of February through August. Bayview is obliged to accept payment

7  under Civil Code § 2924c.  **Exhibit 8.**

8  33.    Plaintiff made the following payments:

9          February 2019 Check No. 1166 $2328.79 returned for escrow

10

11         March 12, 2019 Check No. 1167 $2328.79 returned for escrow

12         April 15, 2019 Check No. 1170 $2898.73 was deposited by Bayview

13         May 13, 2019 Check No.  1175 $11,594.92 mailed

14

15         May 28, 2019 Check No. 1176 $2898.73 deposited by Bayview **Exhibit 9.**

16         June 26, 2019 Check No.  1181 $2898.73 returned

17

18         August 17, 2019 $ 2898.73 mailed

19  34.    Bayview refused some of Plaintiff's payments and attempted to foreclose,

20  using Greenberg, among other things, as a pretext for their actions.   Bayview

21  scheduled a Trustees Sale for October 03, 2019.  Due to Bayview's material failure to

22  perform there is no authority to enforce the contract, so the scheduled trustee sales

23  were a wrongful foreclosure and violation of the FDCPA and The Rosenthal Act.

24  Plaintiff has suffered severe emotional distress. **Exhibit 10.**

25  35.    On January 08, 2020, Plaintiff obtained a Temporary Restraining Order

26  stopping the Trustees Sale from the Sonoma County Superior Court. **Exhibit 11.**

27

28

COMPLAINT FOR VIOLATION OF THE FEDERAL DEBT COLLECTION PROTECTION ACT (FDCPA); VIOLATION OF
THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT (RFDCPA); NEGLIGENT INFLICTION OF
EMOTIONAL DISTRESS and DAMAGES

36.     On or about January 23, 2020, Bayview transferred the servicing of the loan to Shellpoint.  The notice was mailed to their own attorney's address.  **Exhibit 12.**

37.     On July 29, 2020 Plaintiff's Motion for Preliminary Injunction was GRANTED, stopping the trustee's sale pending trial.   A copy of the Order is attached as **Exhibit 13.**

38.     In violation of the Court Orders, Bayview and Shellpoint continued to schedule and reschedule a Trustees Sale of Plaintiff's residential home on January 9, 2020, February 6, 2020, April 16, 2020, July 9, 2020, and September 16, 2020.  **Exhibit 13.**

39.     On September 21, 2020, after repeated requests by Plaintiff, the attorney for Bayview got the sale cancelled outright.  **Exhibit 14.**

40.     Bayview has violated the FDCPA and the RFDCPA by sending multiple communications misrepresenting the amount of the debt and threatening foreclosure, when Bayview was not entitled to foreclose or when it had no intent to foreclose.   In addition to attempting to foreclose on Plaintiff when they had no legal right to do so by overcharging principal, late fees and interest, Bayview and Shellpoint continued the Trustee's Sale after a temporary restraining order and a preliminary injunction was issued by the Sonoma County Superior Court.

41.     Plaintiff has suffered personal humiliation, embarrassment, mental anguish, and emotional distress.  The repeated scheduling of foreclosure sales, only to cancel at the last minute, is an exercise of intimidation much like a mock execution, intended to cause emotional distress.  The natural consequence of this conduct is to harass, oppress, or abuse in connection with the collection of a debt.  The harassment involves the public humiliation of having Plaintiff's name repeatedly in the newspaper at the time of each scheduled sale, and suffered an invasion of her privacy with people stopping by to ask about the sale or making phone calls and texts.

COMPLAINT FOR VIOLATION OF THE FEDERAL DEBT COLLECTION PROTECTION ACT (FDCPA); VIOLATION OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT (RFDCPA); NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS and DAMAGES

42.     Bayview has overcharged Plaintiff in its demand to reinstate her loan by charging default fees and costs for a loan that is not in default. Bayview's attempts to collect money are consequently not actionable.

43.     Bayview took the actions alleged in this Complaint when it had no intention of taking possession of the property, and does not hold any present right to possession of the property claimed as collateral through an enforceable security interest.

44.     Pursuant to 15 U.S.C. § 1692k(a), as a result of Defendants' violations of the Fair debt Collection Practices Act, 15 U.S.C. 1692 et seq., Plaintiff is entitled to actual damages in an amount according to proof; statutory damage up to $1,000.00; and costs and reasonable attorney's fees, as determined by the Court.

45.     Plaintiff is a consumer under 15 U.S.C. § 1692a (3) or § 1692c(d).

46.     The debt at issue is a consumer debt under 15 U.S.C. § 1692a (5).

47.     Defendants are debt collectors under 15 U.S.C. § 1692a (6).

48.     Defendants have violated, through acts or omission, the following parts of the Fair debt Collection Practices Act, 15 U.S.C. 1692 et seq.:

         a.      15 U.S.C. § 1692e, by making false or misleading representations. A debt collector may not use any false, deceptive, or misleading representations or means in connection with the collection of any debt, and

         b.      15 U.S.C. § 1692f, by collection of any amount not expressly authorized by agreement or permitted by law.

         c.      Pursuant to the FDCPA, a debt collector may not falsely represent the amount of any debt. Cal. Civ. Code § 1788.13(e).

         d.      The Defendants are misrepresenting the amount and legal status of the debt in violation of 15 USC 1692e (A).

         e.      The scheduled sale is a threat to take action that cannot legally be taken in violation of 15 USC 1692e (B).

COMPLAINT FOR VIOLATION OF THE FEDERAL DEBT COLLECTION PROTECTION ACT (FDCPA); VIOLATION OF
THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT (RFDCPA); NEGLIGENT INFLICTION OF
EMOTIONAL DISTRESS and DAMAGES

49.     Bayview is threatening to take nonjudicial action to effect dispossession of property when there is no present right to possession of the property claimed as collateral, through an enforceable security interest in violation of 15 USC 1692f (6)(A).

50.     Bayview is trying to foreclose on the basis of the Deed of Trust.  Plaintiff is not in default of her legal obligations under the deed of trust. Bayview chose not to honor the settlement by refusing tender but remain bound by the terms of the deed which can't be enforced because they refuse to cure their material failure to perform. Lansdown has been performing the Memorandum of Understanding.  Bayview has been overcharging principal, interest and late fees and other foreclosure costs which it has not right to enforce.  Bayview's conduct precludes them from enforcing the contract because it placed them in default of their legal obligations.   Bayview has violated the following specific provisions of the deed of trust:

**Section 1. Payments**.

"Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges under the Note."

**Section 14. Loan Charges**.

"Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting the Lender's interest in the Property under the Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in the Security Instrument to charge a specific fee to a Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges and the law of finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits..."

COMPLAINT FOR VIOLATION OF THE FEDERAL DEBT COLLECTION PROTECTION ACT (FDCPA); VIOLATION OF
THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT (RFDCPA); NEGLIGENT INFLICTION OF
EMOTIONAL DISTRESS and DAMAGES

51.    Bayview had the opportunity to cure the breach but still has not done so. This excuses Plaintiff's performance.

52.    When Bayview refused Plaintiff's tender, they breached the settlement agreement. When Bayview refused Plaintiff's offer to cure the alleged missed payments that was a material breach and they lost whatever protection it afforded them. They are trying to foreclose under the deed of trust which allows the borrower to assert the non-existence of default in response to a foreclosure sale. I am not in default of my legal obligations. Overcharging, misrepresenting their authority to modify, prevention, and refusal of performance constitute a material failure to perform on the part of the Lender. Consequently, my performance remains suspended until their material failure to perform is cured.

53.    The conscious and deliberate nature of the actions must be taken into account. If debt collectors abuse their position of power long enough in an effort to wrongfully foreclose, they will eventually prevail by depleting a homeowner's resources given the disparity of economics. This appears to constitute oppression and outrageous conduct that shocks the conscience. If unscrupulous debt collectors abuse the authority granted to them by the power of sale to inflict severe emotional distress and economic injury on borrowers it could place anyone at risk.

54.    Plaintiff is entitled to reasonable attorney's fees and costs pursuant to the deed of trust:

> "Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence." **Exhibit 1.**

55.    The aforementioned conduct of Bayview was an intentional misrepresentation, deceit, or concealment of a material fact known to them, with the intention on the part of Bayview thereby depriving Plaintiff of property or legal

rights or otherwise causing injury, and was despicable conduct that subjected Plaintiff to a cruel and unjust hardship in conscious disregard of Plaintiff's rights, so as to justify an award of exemplary and punitive damages.

**COUNT II**
**Violation of The Rosenthal Act**
**Lansdown vs. Bayview**

56.    Plaintiff realleges and incorporates by reference paragraphs 1 through 55, above, as though fully set forth in this action.

57.    Bayview has violated the RFDCPA by sending multiple communications misrepresenting the amount of the debt and threatening foreclosure when Bayview and Shellpoint where were not entitled to foreclose or when it had no intent to foreclose.

58.    Pursuant to the RFDCPA, a debt collector may not falsely represent the amount of any debt. Cal. Civ. Code § 1788.13(c).

**COUNT III**
**Intentional Infliction of Emotional Distress**
**Lansdown v. Bayview**

59.    Plaintiff realleges and incorporates by reference paragraphs 1 through 55, inclusive, as though fully set forth in this action.

60.    Bayview had no right to foreclose on Plaintiffs' home and repeatedly rescheduled the Trustees Sales, even after a court order not to do so.

61.    Defendant's conduct was intentional and malicious and done for the purpose of causing Plaintiff to suffer humiliation, mental anguish, and emotional and physical distress. Defendant's conduct in confirming and ratifying that conduct was done with knowledge that Plaintiff's emotional and physical distress would thereby increase, and was done with a wanton and reckless disregard of the consequences to Plaintiff.

13
COMPLAINT FOR VIOLATION OF THE FEDERAL DEBT COLLECTION PROTECTION ACT (FDCPA); VIOLATION OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT (RFDCPA); NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS and DAMAGES

62.    As the proximate result of the acts alleged above, Plaintiff suffered humiliation, mental anguish, and emotional and physical distress, all to Plaintiff's damage according to proof.

63.    As a further proximate result of the acts alleged above, Plaintiff was required to incur medical expenses.

64.    As a further proximate result of Defendant's wrongful foreclosure and repeated rescheduling of the Trustees Sale the consequences proximately caused by it, as hereinabove alleged, Plaintiff suffered lost valuable time according to proof.

65.    The acts of Defendant alleged above were willful, wanton, malicious, and oppressive, and justify the awarding of exemplary and punitive damages.

**COUNT IV**
**Breach of Contract**
**Lansdown v.  Bayview**

66.    Plaintiff realleges and incorporates by reference paragraphs 1 through 65, inclusive, as though fully set forth in this action.

67.    Plaintiff has performed all conditions, covenants, and promises required on her part to be performed in accordance with the terms and conditions of the contract.

68.    Plaintiff requested that defendant perform its obligations under the contract. Instead, Bayview breached the deed of trust in the following ways.

69.    Bayview is threatening to take nonjudicial action to effect dispossession of property, when there is no present right to possession of the property claimed as collateral through an enforceable security interest, in violation of 15 USC 1692f (6)(A).

70.    Bayview is trying to foreclose on the basis of the Deed of Trust.  Plaintiff is not in default of her legal obligations under the deed of trust. Bayview chose not to honor the settlement by refusing tender, but remains bound by the terms of the Deed, which can't be enforced because Bayview refuses to cure its material failure to perform.  Plaintiff has been performing the Memorandum of Understanding. Bayview has been overcharging principal, interest, late fees, and other foreclosure

1  costs, which it has no right to enforce. Bayview's conduct precludes it from enforcing
2  the contract, because it placed Bayview in default of its legal obligations.

3  71.    Bayview had the opportunity to cure the breach, but still has not done so.
4  This excuses Plaintiff's performance.

5  72.    When Bayview refused Plaintiff's tender, it breached the settlement
6  agreement. When Bayview refused Lansdown's offer to cure the alleged missed
7  payments, that was a material breach by Bayview, and it lost whatever protection
8  afforded it. Defendants are still trying to foreclose under the deed of trust, which
9  allows the borrower to assert the non-existence of default in response to a foreclosure
10 sale. Plaintiff is not in default of her legal obligations. Overcharging, misrepresenting
11 an authority to modify, prevention, and refusal of performance constitute a material
12 failure to perform on the part of the Lender. Consequently, Plaintiff's performance
13 remains suspended until Defendants' material failure to perform is cured.

14 73.    As a result of Defendants' breach of the contract, Plaintiff has been damaged
15 in a sum within the jurisdiction of this Court according to proof.

**COUNT V**
**Violation of Federal Debt Collection Protection Act**
**Lansdown v. Shellpoint**

18 74.    Plaintiff realleges and incorporates by reference paragraphs 1 through 49,
19 above, as though fully set forth in this action.

20 75.    On February 01, 2020, Bayview transferred the servicing of the loan to
21 Shellpoint. The notice was mailed to their own attorney's address. **Exhibit 10.**

22 76.    On July 29, 2020, Plaintiff's Motion for Preliminary Injunction was GRANTED,
23 stopping the Trustee's Sale pending trial.   A copy of the Order is attached as **Exhibit
24 11.**

25 77.    In violation of the Court Orders, Bayview and Shellpoint continued to
26 schedule and reschedule a Trustees Sale of Plaintiff's residential home on January 9,
27 2020, February 6, 2020, April 16, 2020, July 9, 2020, and September 16, 2020. **Exhibit
28 12.**

COMPLAINT FOR VIOLATION OF THE FEDERAL DEBT COLLECTION PROTECTION ACT (FDCPA); VIOLATION OF
THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT (RFDCPA); NEGLIGENT INFLICTION OF
EMOTIONAL DISTRESS and DAMAGES

78.    On September 21, 2020, the attorney for Bayview got the sale cancelled outright. **Exhibit 13.**

79.    Shellpoint has violated the FDCPA by sending multiple communications misrepresenting the amount of the debt and threatening foreclosure, when Shellpoint was not entitled to foreclose or when it had no intent to foreclose.   In addition to attempting to foreclose on Plaintiff when it had no legal right to do so by overcharging principal, late fees, and interest,  Shellpoint continued the Trustee's Sale after a temporary restraining order and a preliminary injunction was issued by the Sonoma County Superior Court.

80.    Lansdown has suffered personal humiliation, embarrassment, mental anguish, and emotional distress.  The repeated scheduling of foreclosure sales, only to cancel at the last minute, is an exercise of intimidation much like a mock execution that is intended to cause emotional distress.  The natural consequence of this conduct is to harass, oppress, or abuse in connection with the collection of a debt.  The harassment involves the public humiliation of having Plaintiff's name repeatedly in the newspaper at the time of each scheduled Trustee's Sale, and the invasion of her privacy when people telephone or text Plaintiff, or stop by to ask about the Trustee's Sale.

81.    Shellpoint has overcharged Plaintiff in its demand to reinstate her loan, and by charging default fees and costs for a loan that is not in default. Shellpoint's attempts to collect money are consequently not actionable.

82.    Shellpoint took the actions alleged in this Complaint when it had no intention of taking possession of the property and does not hold any present right to possession of the property claimed as collateral through an enforceable security interest.

83.    Pursuant to 15 U.S.C. § 1692k(a), as a result of Defendants' violations of the Fair debt Collection Practices Act, 15 U.S.C. 1692 et seq., Plaintiff is entitled to actual

1  damages in an amount according to proof; statutory damage up to $1,000.00; and

2  costs and reasonable attorney's fees, as determined by the Court.

3  84.    Plaintiff is a consumer under 15 U.S.C. § 1692a (3) or § 1692c(d).

4  85.    The debt at issue is a consumer debt under 15 U.S.C. § 1692a (5).

5  86.    Defendant is a debt collector under 15 U.S.C. § 1692a (6).

6  87.    Defendant has violated, through acts or omission, the following parts of the

7  Fair debt Collection Practices Act, 15 U.S.C. 1692 et seq.:

8      a.    15 U.S.C. § 1692e, by making false or misleading representations. A

9  debt collector may not use any false, deceptive, or misleading representations or

10  means in connection with the collection of any debt, and

11     b.    15 U.S.C. § 1692f, by collection of any amount not expressly authorized

12  by agreement or permitted by law.

13     c.    Pursuant to the FDCPA a debt collector may not falsely represent the

14  amount of any debt. Cal. Civ. Code § 1788.13(e).

15     d.    The Defendant is misrepresenting the amount and legal status of the

16  debt in violation of 15 USC 1692e (A).

17     e.    The scheduled sale is a threat to take action that cannot legally be taken

18  in violation of 15 USC 1692e (B).

19  88.    Shellpoint is threatening to take nonjudicial action to effect dispossession of

20  property when there is no present right to possession of the property claimed as

21  collateral through an enforceable security interest in violation of 15 USC 1692f (6)(A).

22  89.    Defendant is trying to foreclose on the basis of the Deed of Trust.  Plaintiff is

23  not in default of her legal obligations under the deed of trust. Bayview chose not to

24  honor the settlement by refusing tender but remain bound by the terms of the deed

25  which can't be enforced because they refuse to cure their material failure to perform.

26  Lansdown has been performing the Memorandum of Understanding.  Shellpoint has

27  been overcharging principal, interest and late fees and other foreclosure costs which

28

it has not right to enforce. Shellpoint's conduct precludes it from enforcing the contract, because it placed it in default of its legal obligations.

90.     Defendant had the opportunity to cure the breach, but still has not done so. This excuses Plaintiff's performance.

91.     When Defendants refused tender, they breached the Settlement Agreement. When they refused Plaintiff's offer to cure the alleged missed payments, that was a material breach, and Defendants lost whatever protection it afforded them. Defendants are trying to foreclose under the Deed of Trust, which allows the borrower to assert the non-existence of default in response to a foreclosure sale. Plaintiff is not in default of her legal obligations. Overcharging, misrepresenting an authority to modify, prevention, and refusal of performance constitute a material failure to perform on the part of the loan servicer. Consequently, Plaintiff's performance remains suspended until Defendants' material failure to perform is cured.

92.     The conscious and deliberate nature of the actions must be taken into account. If debt collectors abuse their position of power long enough in an effort to wrongfully foreclose, they will eventually prevail by depleting a homeowner's resources given the disparity of economics. This appears to constitute oppression and outrageous conduct that shocks the conscience. If unscrupulous debt collectors abuse the authority granted to them by the power of sale to inflict severe emotional distress and economic injury on borrowers, it could place anyone at risk.

93.     Pursuant to the deed of trust Plaintiff is entitled to reasonable attorney's fees:

> "Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence." **Exhibit 1.**

94.     The aforementioned conduct of Shellpoint was an intentional misrepresentation, deceit, or concealment of a material fact known to it, with the intention on the part of Shellpoint, thereby depriving Plaintiff of property or legal

rights or otherwise causing injury, and was despicable conduct that subjected Plaintiff to a cruel and unjust hardship in conscious disregard of Plaintiff's rights, so as to justify an award of exemplary and punitive damages.

## COUNT VI
### Violation of The Rosenthal Act
### Lansdown v. Shellpoint

95.     Plaintiff realleges and incorporates by reference paragraphs 74 through 94, inclusive, as though fully set forth in this action.

96.     Shellpoint has violated the RFDCPA by sending multiple communications misrepresenting the amount of the debt and threatening foreclosure, when Shellpoint was not entitled to foreclose or when it had no intent to foreclose.

97.     Pursuant to the RFDCPA, a debt collector may not falsely represent the amount of any debt. Cal. Civ. Code § 1788.13(c).

## COUNT VII
### Intentional Infliction of Emotional Distress
### Lansdown v. Shellpoint

98.     Plaintiff realleges and incorporates by reference paragraphs 74 through 94, inclusive, as though fully set forth in this action.

99.     Shellpoint has no right to foreclose on Plaintiffs' home and repeatedly rescheduled the Trustees Sale, even after a Court order not to do so.

100.    Defendant's conduct was intentional and malicious, and done for the purpose of causing Plaintiff to suffer humiliation, mental anguish, and emotional and physical distress. Defendant's conduct in confirming and ratifying that conduct was done with knowledge that Plaintiff's emotional and physical distress would thereby increase, and was done with a wanton and reckless disregard of the consequences to Plaintiff.

101.    As the proximate result of the acts alleged above, Plaintiff suffered humiliation, mental anguish, and emotional and physical distress, all to Plaintiff's damage, in an amount according to proof.

102.   As a further proximate result of the acts alleged above, Plaintiff was required to incur medical expenses.

103.   As a further proximate result of defendant's wrongful foreclosure and repeated rescheduling of the Trustees Sale the consequences proximately caused by it, as hereinabove alleged, plaintiff suffered lost valuable time according to proof.

104.   The acts of Defendant alleged above were willful, wanton, malicious, and oppressive, and justify the awarding of exemplary and punitive damages.

**COUNT VIII**
**Breach of Contract**
**Lansdown v. Shellpoint**

105.   Plaintiff realleges and incorporates by reference paragraphs 74 through 94, above, as though fully set forth in this action.

106.   Shellpoint is threatening to take nonjudicial action to effect dispossession of property when there is no present right to possession of the property claimed as collateral through an enforceable security interest, in violation of 15 USC 1692f (6)(A).

107.   Defendant is trying to foreclose on the basis of the Deed of Trust.  Plaintiff is not in default of her legal obligations under the deed of trust. Bayview chose not to honor the settlement by refusing tender, but remains bound by the terms of the Deed, which can't be enforced because it refuses to cure its material failure to perform. Plaintiff has been performing the Memorandum of Understanding.  Shellpoint has been overcharging principal, interest and late fees and other foreclosure costs, which it has no right to enforce.   Shellpoint's conduct precludes it from enforcing the contract, because it placed it in default of its legal obligations.

108.   Defendant had the opportunity to cure the breach, but still has not done so. This excuses Plaintiff's performance.

109.   When Defendants refused tender, they breached the Settlement Agreement. When they refused Plaintiff's offer to cure the alleged missed payments, that was a material breach, and they lost whatever protection it afforded them. They are trying

to foreclose under the Deed of Trust, which allows the borrower to assert the non-existence of default in response to a foreclosure sale. Plaintiff is not in default of her legal obligations. Overcharging, misrepresenting an authority to modify, prevention, and refusal of performance constitute a material failure to perform on the part of the loan servicer. Consequently, Plaintiff's performance remains suspended until their material failure to perform is cured.

110.    As a result of Defendant's breach of the contract, Plaintiff has sustained damages within the jurisdiction of this Court, according to proof.

Wherefore, Plaintiff prays for Judgment against Defendants as follows:

## COUNT I
### Violation of The Federal Debt Collection Protection Act
### Lansdown v. Bayview

1.    Actual damages according to proof;

2.    Punitive damages;

3.    Attorney's fees and costs.

## COUNT II
### Violation of The Rosenthal Fair Debt Collection Practices Act
### Lansdown v. Bayview

4.    Actual damages according to proof;

5.    Punitive damages;

6.    Attorney's fees and costs.

## COUNT III
### Intentional Infliction of Emotional Distress
### Lansdown v. Bayview

7.  For general damages for severe emotional distress and mental suffering according to proof;

8.  For medical and related expenses according to proof;

9.  For lost wages according to proof;

10.  For punitive damages.

## COUNT IV
### Breach of Contract
### Lansdown v. Bayview

11.  For compensatory damages in a sum according to proof within the jurisdiction of this court;

12. For interest according to proof;

13. For reasonable attorney's fees according to proof.

## COUNT V
### Violation of Federal Debt Collection Protection Act
### Lansdown v. Shellpoint

14.  Actual damages according to proof;

15.  Punitive damages;

16.  Attorney's fees and costs.

## COUNT VI
### Violation of The Rosenthal Act
### Lansdown v. Shellpoint

17.  Actual damages according to proof;

18.  Punitive damages;

19.  Attorney's fees and costs.

## COUNT VII
### Intentional Infliction of Emotional Distress
### Lansdown v. Shellpoint

20.  For general damages for severe emotional distress and mental suffering

according to proof;

21.  For medical and related expenses according to proof;

22.  For lost wages according to proof;

23.  For punitive damages.

## COUNT VIII
### Breach of Contract
### Lansdown v. Shellpoint

24. For compensatory damages in a sum within the jurisdiction of this court according to proof;

25. For interest according to proof; and

26. For reasonable attorney's fees according to proof.

## ALL CAUSES OF ACTION

27.  For interest provided by law, including, but not limited to, California Civil Code § 3291;

28.  For costs of suit incurred herein; and

29. For such other and further relief as the Court may deem just and proper.


Dated:  February 06, 2022                       LAW OFFICES OF RICHARD SAX


                                                *Richard Sax*


                                                Richard Sax, Attorney for Plaintiff,
                                                MELISSA LANSDOWN

COMPLAINT FOR VIOLATION OF THE FEDERAL DEBT COLLECTION PROTECTION ACT (FDCPA); VIOLATION OF
THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT (RFDCPA); NEGLIGENT INFLICTION OF
EMOTIONAL DISTRESS and DAMAGES