UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELISSA LANSDOWN,<br><br>    Plaintiff,<br><br>    v.<br><br>BAYVIEW LOAN SERVICING, LLC, et al.,<br><br>    Defendants. | Case No. 22-cv-00763-TSH<br><br>**ORDER RE: MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 43, 49 |

## I. INTRODUCTION

Pending before the Court are a Motion to Dismiss filed by Defendants Bayview Loan Servicing, LLC ("Bayview") and NewRez LLC dba Shellpoint Mortgage Servicing ("Shellpoint")[1] and a Motion to Dismiss filed by Defendant Bank of America, N.A. ("BANA"). ECF Nos. 43, 49. The Court finds the matters suitable for disposition without oral argument and **VACATES** the January 26, 2023 hearing. For the reasons stated below, the Court **GRANTS IN PART AND DENIES IN PART** the Motion to Dismiss by Bayview and Shellpoint, and **GRANTS** BANA's Motion to Dismiss.[2]

## II. BACKGROUND

**A. Factual Background**

On April 25, 2001, Lansdown and Ellis Greenberg signed a promissory note and

---

[1] The Motion to Dismiss filed on behalf of Bayview and Shellpoint was also filed on behalf of New York Bank Mellon. ECF No. 43. On December 20, 2022, Plaintiff filed a Notice of Voluntary Dismissal of New York Bank Mellon. ECF No. 51. Thus, New York Bank Mellon is no longer a party to this proceeding and the pending Motion to Dismiss is moot as to New York Bank Mellon.
[2] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 7, 13, 30, and 53.

deed of trust for real property ("Property"). ECF No. 41 ¶ 19, 41-1, Exhibit 1. In 2003, Greenberg executed a quit claim deed of his interest to Lansdown. *Id*. ¶ 20; 41-2, Exhibit 2 (Quitclaim Deed). On November 1, 2009, Lansdown fell behind on her mortgage payments because BANA allegedly told her that she needed to fall behind in payments to qualify for a loan modification. *Id*. ¶¶ 24-25. On February 18, 2010, a Notice of Default was recorded against the Property with Bank of New York Mellon named as the creditor. *Id*. ¶ 27.

Lansdown filed a lawsuit in Sonoma County Superior Court against Bayview and BANA. *Id*. ¶ 28. On December 19, 2018, Lansdown, BANA, and Bayview signed a Memorandum of Understanding Re Settlement. *Id*. ¶ 28; 41-3, Exhibit 3 (Memorandum of Understanding). On January 28, 2019, Bayview sent Lansdown a Confidential Settlement Agreement and Loan Modification Agreement. *Id*. ¶ 29; 41-4, Exhibit 4. On April 3, 2019, Lansdown signed the Settlement Agreement. *Id*. ¶ 32; 41-6, Exhibit 6 (Settlement Agreement). On May 13, 2019, Lansdown executed the Loan Modification Agreement. *Id*. ¶ 34; 41-8, Exhibit 8 (Loan Modification Agreement). Between February 2019 and August 2019, Lansdown made seven payments towards the Property. *Id*. ¶¶ 34-35. However, Bayview refused some of Lansdown's payments and attempted to foreclose on the Property. *Id*. ¶ 36.

On January 8, 2020, Lansdown obtained a Temporary Restraining Order and prevented foreclosure on the Property. *Id*. ¶ 37. Bayview transferred servicing of Lansdown's loan to Shellpoint on January 23, 2020. *Id*. ¶ 38. On July 29, 2020, Lansdown's Motion for Preliminary Injunction was granted. *Id*. ¶ 39. Bayview and Shellpoint attempted to foreclose the Property on September 16, 2020. *Id*. ¶ 40. On September 21, 2020, the attorney for Shellpoint and Bayview got the foreclosure sale cancelled. *Id*. ¶¶ 41, 71.

**B.     Procedural Background**

On February 6, 2022, Lansdown filed the instant action against Defendants Bayview, Shellpoint, and DOES 1-10. ECF No. 1. On April 25, 2022, Lansdown filed a First Amended Complaint. ECF No. 17. On May 13, 2022, Lansdown filed another First Amended Complaint ("FAC") naming Defendants Bayview, Shellpoint, BANA, and New York Bank Mellon. ECF No. 21. The FAC alleged the following causes of action: 1) violation of Federal Debt Collection

1  Protection Act (against Bayview), 2) violation of Rosenthal Act (against Bayview), 3) intentional

2  infliction of emotional distress ("IIED") (against Bayview), 4) breach of contract (against

3  Bayview), 5) violation of Federal Debt Collection Protection Act (against Shellpoint), 6) violation

4  of Rosenthal Act (against Shellpoint), 7) IIED (against Shellpoint), 8) breach of contract (against

5  Shellpoint), and 9) Rescission (against all defendants).  ECF No. 21 ¶¶ 19-126.

6        On May 9, 2022, Bayview and Shellpoint filed a Motion to Dismiss pursuant to Federal

7  Rules of Civil Procedure 12(b)(7) and 12(b)(6).  ECF No. 18.  On June 6, 2022, BANA filed a

8  Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF No. 31.

9        On September 13, 2022, the Court issued an Order granting in part the Motion to Dismiss

10 by Bayview and Shellpoint.  ECF No. 39.  The Court granted dismissal of the causes of action for

11 violation of Fair Debt Collection Protection Act, violation of Rosenthal Act, and IIED.  *Id.* at 8-11.

12 The Court granted leave to amend for all dismissed causes of action against Bayview and

13 Shellpoint.  *Id.*  The Court denied dismissal of the claims for breach of contract and recission

14 against Bayview and Shellpoint.  *Id.* at 11-12.  The Court's September 13, 2022 Order also

15 granted BANA's Motion to Dismiss the recission cause of action against BANA.  *Id.* at 13.

16       On October 12, 2022, Lansdown filed a Second Amended Complaint ("SAC") naming

17 Defendants Bayview, Shellpoint, BANA, and New York Bank Mellon.  ECF No. 41.  The Second

18 Amended Complaint alleged the following causes of action: 1) IIED (against Bayview and

19 BANA), 2) breach of contract (against Bayview and BANA), 3) IIED (against Shellpoint), and 4)

20 breach of contract (against Shellpoint).  *Id. ¶¶* 18-99.

21       On October 26, 2022, Bayview, Shellpoint, and New York Bank Mellon filed a Motion to

22 Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6).  ECF No. 43.  On November 9,

23 2022, Lansdown filed an opposition.  ECF No. 45.  On November 16, 2022, Bayview, Shellpoint,

24 and New York Bank Mellon filed a reply.  ECF No. 46.

25       On December 20, 2022, Lansdown filed a Notice of Voluntary Dismissal of New York

26 Bank Mellon.  ECF No. 51.

27       On December 9, 2022, BANA filed a Motion to Dismiss pursuant to Federal Rules of Civil

28 Procedure 12(b)(6).  ECF No. 49.  On December 22, 2022, Lansdown filed an opposition.  ECF

1  No. 54.  On December 30, 2022, BANA filed a reply.  ECF No. 55.

### III.  LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim.  A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (citation and quotation marks omitted).  Rule 8 provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Thus, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009).  A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief.  *Twombly*, 550 U.S. at 555 (quotations and citation omitted).

In considering a motion to dismiss, the court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party.  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).  However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."  *Iqbal*, 556 U.S. at 678.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citations and quotations omitted).  However, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., [and] futility of amendment.'"  *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

4

## IV. DISCUSSION

**A.  Bayview and Shellpoint's Motion to Dismiss Pursuant to Rule 12(b)(6)[3]**

**1.  Claims I & III: Intentional Infliction of Emotional Distress**

Bayview and Shellpoint argue that Lansdown's IIED claims fail because the Property did not foreclose, Defendants were exercising their contract rights, and the conduct alleged is insufficiently outrageous. ECF No. 43 at 8-11. Lansdown argues that she has sufficiently pled the IIED elements, and that Defendants abused their economic power over Lansdown. ECF No. 45 at 18-30.

A claim for IIED requires "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1245 (9th Cir. 2013) (quoting *Hughes v. Pair*, 46 Cal. 4th 1035, 1050-51 (2009)). For conduct to be outrageous, the conduct must be "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Hughes*, 46 Cal. 4th at 1050-51 (quoting *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (1993)). "In the context of debt collection, courts have recognized that the attempted collection of a debt by its very nature often causes the debtor to suffer emotional distress." *Ross v. Creel Printing & Publ'g Co.*, 100 Cal. App. 4th 736, 745 (2002). Thus, absent bad faith, "the act of foreclosing on a home does not qualify as the type of extreme behavior that supports an [intentional infliction of emotional distress] claim." *Guccione v. JPMorgan Chase Bank, N.A.*, No. 3:14-CV-04587 LB, 2015 WL 1968114, at *20 (N.D. Cal. May 1, 2015) (quoting *Kennedy v. World Sav. Bank, FSB*, No.: 14–cv–05516–JSC, 2015 WL 1814634, at *9 (N.D. Cal. Apr. 21, 2015)). Where there are no allegations that a defendant "threatened, insulted, abused or humiliated" a plaintiff during foreclosure

---

[3] Bayview and Shellpoint request the Court take judicial notice of Lansdown's complaint in Sonoma County Superior Court and the Second Amended Complaint filed with this Court on October 12, 2022. ECF No. 43-3. Lansdown did not make an objection to this request. The Court **GRANTS** the request for judicial notice. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record.").

5

1    proceedings, an IIED claim will not stand. *Wilson v. Hynek*, 207 Cal. App. 4th 999, 1009 (2012)).

2          The Court previously found the factual allegations in Lansdown's FAC conclusory and
3    insufficient to plead IIED and dismissed with leave to amend. ECF No. 39 at 10-11. The Court
4    now finds the factual allegations in the SAC are almost entirely a restatement of the FAC, and thus
5    similarly fail to plead IIED. *Compare* ECF No. 21 ¶¶ 18-43, 62-67, 100-105 (FAC), *with* ECF
6    No. 41 ¶¶ 18-50, 65-89 (SAC). Lansdown alleges in her SAC, as she did in her FAC, that
7    Defendants wrongfully commenced foreclosure proceedings, refused to accept payments, and
8    repeatedly rescheduled the foreclosure sale. ECF No. 41 ¶¶ 22-50. However, the non-conclusory
9    allegations still do not indicate that "any of the defendants threatened, insulted, abused or
10   humiliated [Plaintiff]." *Wilson*, 207 Cal. App. 4th at 1009. *Compare Ragland v. U.S. Bank Nat'l*
11   *Assn.*, 209 Cal. App. 4th 182 (2012) (determining there was a question of fact as to outrageous
12   conduct where allegations included that the defendant advised that they could not accept loan
13   payments nor foreclose until the conclusion of a forgery investigation, but then foreclosed the
14   property anyway), *with Martinez v. Flagstar Bank, FSB*, No. 215CV01934KJMCKD, 2016 WL
15   3906810, at *9 (E.D. Cal. July 19, 2016) (finding allegations that defendant lost loan modification
16   application materials, promised not to foreclose while the modification was pending and then
17   foreclosed were insufficient to plead outrageous conduct.). The SAC also fails to make non-
18   conclusory allegations that Defendants intended or acted with reckless disregard to cause
19   emotional distress. *Cf. Helmer v. Bank of Am., N.A.*, No. CIV S-12-0733 KJM, 2013 WL
20   1192634, at *6 (E.D. Cal. Mar. 22, 2013) ("[A]ctions inducing plaintiff to stop making mortgage
21   payments and leading to foreclosure" were insufficient to plead IIED where there were no facts
22   indicating that defendant "intentionally caused plaintiff's emotional distress.")

23         Accordingly, the Court **GRANTS** Bayview and Shellpoint's Motion to Dismiss
24   Lansdown's IIED claims.

25       **2.**    **Claims II & IV: Breach of Contract Against Bayview and Shellpoint**
26           **a.**    **Claim IV: Breach of Contract Against Shellpoint**

27         Shellpoint argues that the breach of contract claim against Shellpoint should be dismissed
28   because Lansdown does not allege that Shellpoint is a party to the Memorandum of

1  Understanding, Settlement Agreement, or Loan Modification Agreement. ECF No. 43 at 12-14.
2  Lansdown fails to respond to Shellpoint's argument.

3        The elements of a cause of action for breach of contract are: 1) the existence of the
4  contract; 2) performance by the plaintiff or excuse for nonperformance; 3) breach by the
5  defendant; and 4) damages. *First Commercial Mortg. Co. v. Reece*, 89 Cal. App. 4th 731, 745
6  (2001). A breach of contract claim requires "privity of contract between the plaintiff and the
7  defendant." *Simoni v. Am. Media, Inc.*, No. CV 14-573-R, 2014 WL 12597640, at *3 (C.D. Cal.
8  July 22, 2014), *aff'd*, 673 F. App'x 782 (9th Cir. 2017) (striking a breach of contract claim where
9  the plaintiff had not met his burden of demonstrating privity between himself and the defendant).

10        The SAC does not allege that Shellpoint is a party to a contract, but notes that Shellpoint
11  assumed the servicing of Lansdown's loan in January or February of 2020. ECF No. 41 ¶¶ 4-5,
12  22, 38, 66, 68. It is possible that Lansdown means to allege Shellpoint is the successor to
13  Bayview in servicing the loan and has correspondingly assumed Bayview's contractual
14  obligations. *See, e.g.*, *Randell v. Flagstar Bank FSB*, No. 2:14-CV-1575-TLN-CMK, 2015 WL
15  2159595, at *7 (E.D. Cal. May 7, 2015) (finding plaintiff could bring a claim against the new loan
16  servicer for breach of the loan modification agreement entered into by the prior loan servicer).
17  However, Lansdown's opposition does not respond to Shellpoint's argument that it is not a party
18  to the contracts, and thus concedes the argument. *See Linder v. Golden Gate Bridge, Highway &*
19  *Transportation Dist.*, No. 4:14-CV-03861 SC, 2015 WL 4623710, at *4 (N.D. Cal. Aug. 3, 2015)
20  ("[F]ailure to respond in an opposition brief to an argument put forward in an opening brief
21  constitutes waiver or abandonment . . . .") (quoting *Stichting Pensioenfonds ABP v. Countrywide*
22  *Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011)). Further, the SAC does not make clear
23  to which contracts or obligations Shellpoint has allegedly succeeded. Thus, the Court finds that
24  the breach of contract claim against Shellpoint is insufficiently pled.

25        The Court **GRANTS** Shellpoint's Motion to Dismiss Lansdown's breach of contract
26  claim. The Court **GRANTS** Lansdown leave to amend, to the extent she may plead facts alleging
27  Shellpoint became successor to the contracts at issue. *See United States v. Reunion Mortg., Inc.*,
28  No. C 13-02340 SBA, 2013 WL 5944252, at *8 (N.D. Cal. Nov. 5, 2013) (dismissing a breach of

1  fiduciary duty claim based on plaintiff's failure to respond to defendant's argument, but granting
2  leave to amend where a sufficient claim could be pled).

### a. Claim II: Breach of Contract Against Bayview

#### i. Breach of the Memorandum of Understanding

Bayview argues that Lansdown has failed to allege performance or excuse of non-performance under the Memorandum of Understanding and thus has not pled the elements of breach of contract. ECF No. 43 at 12-13. Lansdown argues that she has been performing the Memorandum of Understanding. ECF No. 45 at 30-31.

The Court previously addressed Bayview's argument that Lansdown's breach of contract claim did not sufficiently allege performance with regard to the FAC and found performance had been sufficiently pled. ECF No. 39 at 11 ("Under the liberal pleadings of FRCP 9(c), the Court finds the FAC sufficiently alleges Lansdown's performance."). The Court now determines that the SAC also sufficiently alleges performance of the Memorandum of Understanding. The SAC states that Lansdown "has performed all conditions, covenants, and promises required," "has been performing the Memorandum of Understanding," and "is not in default under legal obligations." ECF No. 41 ¶¶ 52, 54, 57. Under the liberal pleading standards of Federal Rules of Civil Procedure 9(c), these allegations suffice. *See Kiernan v. Zurich Companies*, 150 F.3d 1120, 1124 (9th Cir. 1998) (finding allegation that incident occurred "while the policy was in full force and effect" sufficient to plead plaintiff satisfied conditions precedent).

#### ii. Breach of the Settlement Agreement

Bayview argues that Lansdown has failed to allege that the Settlement Agreement is an enforceable contract against Bayview because Bayview never executed it. ECF No. 43 at 13. Lansdown does not directly address Bayview's argument that the Settlement Agreement is not an enforceable contract against Bayview. ECF No. 45 at 30-32. Lansdown states that Bayview never executed the Settlement Agreement. *Id.* at 31.

The first element required for breach of contract is the existence of a contract. *Reece*, 89 Cal. App. 4th at 745. "An essential element of any contract is the consent of the parties, or mutual assent." *Donovan v. RRL Corp.*, 26 Cal. 4th 261, 271 (2001) (citing Cal. Civ. Code §§ 1550(2),

8

1565(2)). "[W]here the existence . . . of a contract or the terms thereof is the point in issue, and the evidence is conflicting or admits of more than one inference, it is for the . . . trier of the facts to determine whether the contract did in fact exist." *Vita Planning & Landscape Architecture, Inc. v. HKS Architects, Inc.*, 240 Cal. App. 4th 763, 771 (2015), *review denied* (Jan. 13, 2016) (alteration in original) (quotation and citation omitted).

The Court finds that Lansdown has not sufficiently alleged that the Settlement Agreement is a contract. Plaintiff's only response to Bayview's Motion to Dismiss alleging the Settlement Agreement was not executed by Bayview is to agree that "[n]either The Bank of America nor Bayview executed the Confidential Settlement Agreement." ECF No. 45 at 31. The fact that Bayview did not sign the Settlement Agreement does not necessarily mean it was not a contract. *See J. A. Jones Const. Co. v. Plumbers & Pipefitters Loc. 598*, 568 F.2d 1292, 1294-95 (9th Cir. 1978) ("[F]ailure of one of the parties to sign the agreement does not necessarily prevent the nonsigning party from being bound by the agreement."). However, Lansdown does not contend that Bayview is bound by the Settlement Agreement or even make clear that the breach of contract claim includes breach of the Settlement Agreement. ECF No. 45 at 31. By not responding to Bayview's argument, Lansdown appears to abandon any argument that her claim was premised on breach of the Settlement Agreement. *See Linder*, 2015 WL 4623710, at *4.

The Court thus concludes that Lansdown has not made a plausible claim for breach of contract related to the Settlement Agreement. *Cf. Mazal Grp., LLC v. Barak*, No. CV184983DMGFFMX, 2019 WL 4316244, at *3 (C.D. Cal. June 17, 2019) (dismissing a breach of contract claim where the plaintiff did not dispute that the party did not sign the contract); *Scott v. Saxon Mortg. Servs., Inc.*, No. C-13-03085 EDL, 2013 WL 5587557, at *4 (N.D. Cal. Oct. 10, 2013) (granting dismissal for breach of contract based on a loan modification agreement where the plaintiff at the hearing "clarified that there was no such agreement.").

### iii. Breach of the Loan Modification Agreement

Bayview argues that Lansdown has failed to allege that the Loan Modification Agreement is an enforceable contract against Bayview. ECF No. 43 at 13-14. Lansdown does not directly address Bayview's argument that the Loan Modification Agreement is an unenforceable contract.

9

1  ECF No. 45 at 30-32. Lansdown states that none of the parties signed the Loan Adjustment
2  Agreement. *Id.* at 31.

3  To the extent that Lansdown is alleging breach of the Loan Modification Agreement, the SAC fails in the same way that it did for breach of the Settlement Agreement. Lansdown's opposition states that "[n]one of the parties signed the Loan Adjustment Agreement" and does not otherwise respond to Bayview's argument that is not an enforceable agreement. ECF No. 45 at 31. It is again unclear whether Lansdown even intends to plead breach of contract based on the Loan Modification Agreement. *Cf. Way v. JP Morgan Chase Bank, N.A.*, No. 216CV02244TLNKJN, 2018 WL 2117630, at *2–3 (E.D. Cal. May 8, 2018) (dismissing a breach of contract claim for failing to plead the existence of a contract where it was unclear from the pleadings whether plaintiff was claiming breach of the deed of trust, the promissory note, the loan modification agreement, or all three).

### iv. Breach of the Deed of Trust

Bayview does not make arguments in relation to the Deed of Trust in its Motion to Dismiss, but in its reply argues that in the event Lansdown is alleging breach of the Deed of Trust, her SAC fails to make out such a claim. ECF No. 46 at 13-14. Lansdown argues in her opposition that the breach of contract claim is sufficient where Bayview breached the deed of trust by trying to foreclose while Lansdown is not in default. ECF No. 45 at 30-31.

The Court finds that the SAC sufficiently pleads a breach of contract claim based on the Deed of Trust. The SAC alleges the existence of the Deed of Trust, that Lansdown is "not in default of her legal obligations under the deed of trust," (ECF No. 41 ¶¶ 54, 57) identifies the specific provisions of the Deed of Trust at-issue, (*id.* ¶ 57) alleges Bayview breached by moving forward with foreclosure and overcharging Lansdown, (*id.* ¶¶ 54, 57) and asks for compensatory damages (*id*. at 20). These facts are adequate to plead the elements of breach of contract and put Bayview on notice to defend the claim. *Reece*, 89 Cal. App. 4th at 745.

In summary, the Court **GRANTS** Bayview's Motion to Dismiss Lansdown's breach of contract claim against Bayview as to the Settlement Agreement and the Loan Modification Agreement but **DENIES** the motion as to the Memorandum of Understanding and Deed of Trust.

United States District Court
Northern District of California

1  The Court **GRANTS** Lansdown leave to amend to the extent Lansdown seeks to clarify she is
2  pursuing a breach of contract claim against Bayview based on the Loan Modification Agreement
3  or Settlement Agreement, and on what bases.

**B.       BANA's Motion to Dismiss Pursuant to Rule 12(b)(6)**

   **1.       Plaintiff's Opposition**

As an initial matter, BANA requests in its reply that the Court disregard Lansdown's opposition to BANA's Motion to Dismiss for violating the Northern District of California Civil Local Rules 3-4(c)(2) and 7-4(b). ECF No. 55 at 2-3.

N.D. Cal. Civ. R. 3-4(c)(2) requires that papers presented for filing "must be double-spaced with no more than 28 lines per page." Lansdown's opposition to BANA's Motion to Dismiss is single-spaced in multiple instances, for pages at a time. ECF No. 54 at 9-13, 16-17, 18-22, 24-25. Quotations are not required to be double-spaced, per the Civil L.R. 3-4(c)(2), and most of the single-spaced text are quoted passages from the SAC. *Id.* at 9-13, 16-17, 18-22. However, not all the single-spaced sections are quotations. ECF No. 54 at 24-25.

Plaintiff's counsel is warned that strict compliance with the Civil Local Rules will be expected going forward and is cautioned to be judicious with block quotations. "Overly long briefs . . . may actually hurt a party's case, making it 'far more likely that meritorious arguments will be lost amid the mass of detail.'" *Elec. Frontier Found. v. C.I.A.*, No. C 09-03351 SBA, 2012 WL 1123529, at *1 (N.D. Cal. Apr. 3, 2012) (quoting *Fleming v. Cty. of Kane, State of Ill.*, 855 F.2d 496, 497 (7th Cir. 1988)). The Court will nonetheless consider the arguments in Plaintiff's opposition, as it has not been shown to be prejudicial to BANA. *Cf. Sturm v. Davlyn Invs., Inc.*, No. CV 12-07305 DMG AGRX, 2013 WL 8604662, at *1 (C.D. Cal. Sept. 30, 2013) (determining to consider plaintiff's opposition to summary judgment despite excessive page length and delay in filing where both parties violated local rules and defendant did not show they suffered prejudice). The Court would prefer to address the claims on the merits.

   **2.       Claim I: Intentional Infliction of Emotional Distress against BANA**

BANA argues that Lansdown's IIED claim fails because the claim is time-barred and, alternatively, that Lansdown has not pled the necessary elements. ECF No. 49 at 9-11. Lansdown

11

1   argues that her IIED claim is not time-barred under the continuing violation doctrine or,

2   alternatively, the theory of continuous accrual doctrine. ECF No. 54 at 14-17. Additionally,

3   Lansdown argues that she has sufficiently pled the IIED elements. *Id.* at 17-27.

4   Lansdown's Claim I for IIED is pled jointly against Bayview and BANA. ECF No. 41 ¶¶

5   18-50. As discussed above, the facts pled fail to sufficiently make out the necessary elements of

6   an IIED claim. The Court therefore dismisses Lansdown's IIED claim against BANA on the same

7   grounds as those determined against Bayview and does not address BANA's other arguments.

8   Accordingly, the Court **GRANTS** BANA's Motion to Dismiss Lansdown's IIED claim.

### 3.  Claim II: Breach of Contract against BANA

#### i.  Breach of the Memorandum of Understanding

##### (i)  The Existence of a Contract

BANA argues that the Memorandum of Understanding was not signed by Bayview, and thus is an unenforceable contract. ECF No. 49 at 14. Lansdown argues that BANA and Bayview both signed the Memorandum of Understanding. ECF No. 54 at 8.

As stated previously, the first element a plaintiff must allege to plead breach of contract is the existence of a contract. *Reece*, 89 Cal. App. 4th at 745. While BANA claims that Bayview did not sign the Memorandum of Understanding, and thus no contract exists, Lansdown's opposition states that Bayview's attorney signed the Memorandum of Understanding. ECF No. 54 at 8. Additionally, the Memorandum of Understanding annexed to the SAC includes a signature by Bayview's attorney. ECF No. 41-3, Exhibit 3. Further, BANA concedes that BANA itself signed the Memorandum of Understanding, and the signatory to an agreement has the burden of showing that contract was not intended to bind the parties until signed by all parties. *Fagelbaum & Heller LLP v. Smylie*, 174 Cal. App. 4th 1351, 1365 (2009) ("It is the signatory resisting enforcement of the contract who 'cannot escape liability unless he affirmatively establishes that the signatures of all parties were contemplated as being a condition precedent to the validity of the contract [citation].'") (alterations in original) (quoting *Angell v. Rowlands*, 85 Cal. App. 3d 536, 541 (1978)). BANA's argument that the Memorandum of Understanding is unenforceable thus fails both because there is a dispute as to that fact, and because the burden is on BANA as a

1    signatory to establish that the Memorandum of Understanding did not go into effect because of

2    Bayview's alleged lack of signature.

### (ii) Breach by the Defendant

Alternatively, BANA argues that the SAC does not point to a provision of the Memorandum of Understanding that BANA breached, and thus fails to plead breach of contract. ECF No. 49 at 14.  To the extent Lansdown responds, she argues that BANA has liability to Lansdown for the actions of its agent Bayview.  ECF No. 54 at 14.

The Court agrees with BANA that Lansdown's allegations regarding breach of contract fail to put BANA on notice of the conduct by which it breached the Memorandum of Understanding. "While it is unnecessary for a plaintiff to allege the terms of the alleged contract with precision . . . the Court must be able generally to discern at least what material obligation of the contract the defendant allegedly breached." *Langan v. United Servs. Auto. Ass'n*, 69 F. Supp. 3d 965, 979 (N.D. Cal. 2014) (citation omitted).  The Memorandum of Understanding distinguishes obligations contemplated for Bayview and BANA.  *See* ECF No. 41-3, Exhibit 3 ¶ 7 ("The Costs Waiver, as to BANA, and the Modification, as to Bayview, are the consideration for each's respective benefits, rights, and entitlements under this Agreement . . . .").  However, the SAC's breach of contract claim singularly alleges conduct or omissions by Bayview.  ECF No. 41 ¶¶ 51-64. Without any allegations as to BANA's conduct or the relevant contract provision, BANA cannot plausibly defend against the breach of contract claim.  *See Gabrielian v. JPMorgan Chase & Co.*, No. CV16-131 PSG (GJSX), 2016 WL 11780191, at *3 (C.D. Cal. Mar. 15, 2016) (dismissing breach of contract claim against Chase because "[a]lthough Plaintiffs assert that representatives of Assurant made certain promises and assurances, they do not describe any acts or omissions on the part of Chase which constitute a breach. . . .  It is entirely unclear from the Complaint what part of the agreement Chase breached or what Chase did to breach it.").

To the extent that Lansdown argues in her opposition that she has pleaded BANA and Bayview are agents of one another and thus has made out a breach of contract claim as to both of them, this argument fails.  ECF No. 54 at 8, 14.  While determination of an agency relationship is usually a question of fact, "the Court can nonetheless decide whether the allegations in the

13

complaint are sufficient to plead an agency relationship without making the ultimate factual determination of whether the agency relationship actually exists." *Akins v. Seterus, Inc.*, No. 216CV01656TLNKJN, 2019 WL 4243221, at *4 (E.D. Cal. Sept. 6, 2019). Here, the SAC pleads no facts indicating any agency relationship between Bayview and BANA beyond boilerplate language. ECF No. 41 ¶ 16 ("[E]ach Defendant sued herein in relation to the Real Property they claim an interest in was the agent and/or employee of each of the remaining Defendants thereof, and at all times was acting within the purpose and scope of such agency and/or employment. All Defendants have joint and several liability."). This language does not plausibly allege an agency relationship to make out a breach of contract claim against BANA. *See Church Mut. Ins. Co., S.I. v. GuideOne Specialty Mut. Ins. Co.*, 72 Cal. App. 5th 1042, 1061-62 (2021), *as modified on denial of reh'g* (Jan. 11, 2022) (listing the elements to establish agency in California). *See also Mazal Grp., LLC v. Espana*, No. 217CV05856RSWLKS, 2017 WL 6001721, at *3 (C.D. Cal. Dec. 4, 2017) (dismissing a breach of contract claim premised on an agency relationship where the complaint alleged "each Defendant was an agent of the other Defendant and was acting in the course of their agency at all relevant times."); *Akins*, 2019 WL 4243221, at *5 (finding an agency relationship was not sufficiently pled for breach of contract where the only allegation was that one defendant purchased the plaintiff's loan from the other).

### ii. Breach of the Settlement Agreement

BANA argues that the Settlement Agreement is not an enforceable contract against BANA because BANA did not sign it and that the SAC does not allege mutual assent. ECF No. 49 at 12-13. Lansdown does not directly address BANA's argument that the Settlement Agreement is not enforceable against BANA. ECF No. 54 at 27-28. Lansdown states that BANA never executed the Settlement Agreement. *Id.*

Lansdown has not sufficiently pled breach of the Settlement Agreement against BANA. Just as with the breach of contract claim against Bayview, it is unclear that Lansdown's claim includes an allegation that BANA breached the Settlement Agreement. Further, Lansdown fails to address BANA's argument that the Settlement Agreement is an unenforceable contract, and thus concedes it. *See Linder*, 2015 WL 4623710, at *4.

14

### iii. Breach of the Loan Modification Agreement

BANA argues that it was not a party to the Loan Modification Agreement and thus the contract is unenforceable against BANA. ECF No. 49 at 11-12. Lansdown does not address BANA's argument that BANA is not a party to the Loan Modification Agreement. ECF No. 54 at 27-28. Lansdown states that BANA never signed the Loan Modification Agreement. *Id.*

As stated above, a cause of action for breach of contract requires privity of contract between the plaintiff and the defendant. *Simoni*, 2014 WL 12597640, at *3. BANA is not listed as a party to the Loan Modification Agreement, and the Memorandum of Understanding is explicit that BANA is not a party. ECF No. 41-3, Exhibit 3 ¶ 5 ("The parties acknowledge and understand that Defendant Bank of America, N.A. ('BANA') is in no way a party to the Modification."). As such, there can be no breach of contract claim against BANA based on the Loan Modification Agreement. *See Kokopelli Cmty. Workshop Corp. v. Select Portfolio Servicing, Inc.*, No. 10CV1605 DMS RBB, 2011 WL 3490136, at *8 (S.D. Cal. Aug. 10, 2011) (dismissing breach of contract claim against a particular defendant where the contract was not alleged to be between the plaintiff and that defendant). A claim of breach based on an agent relationship between BANA and Bayview also fails as the SAC does not allege sufficient facts for such a relationship to be plausible.

### iv. Breach of the Deed of Trust

BANA does not make arguments in relation to the Deed of Trust in its Motion to Dismiss. Lansdown argues in her opposition that the breach of contract claim is sufficient where Bayview breached the deed of trust by trying to foreclose while Lansdown is not in default. ECF No. 54 at 27-29.

To the extent Lansdown's breach of contract claim against BANA is premised on breach of the Deed of Trust, the Court finds this claim fails as the SAC does not make clear in what way BANA breached the Deed of Trust. As discussed with the Memorandum of Understanding, an agency relationship is inadequately pled between BANA and Bayview, and the breach of contract claim in the SAC only alleges conduct by Bayview.

Accordingly, the Court **GRANTS** BANA's Motion to Dismiss the breach of contract

1 claim. The Court **GRANTS** leave to amend the breach of contract claim against BANA in the event Lansdown has facts alleging that BANA, in particular, breached the Deed of Trust, Settlement Agreement, or Memorandum of Understanding.

## V.  CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART AND DENIES IN PART** Bayview and Shellpoint's Motion to Dismiss. The Court **GRANTS** BANA's Motion to Dismiss. The Court **GRANTS** Lansdown leave to amend the breach of contract claim as follows: leave to amend **GRANTED** as to Shellpoint to the extent Lansdown has facts alleging Shellpoint assumed obligations under relevant contracts; leave to amend **GRANTED** as to Bayview to the extent Lansdown seeks to clarify she is alleging breach of the Loan Modification Agreement and Settlement Agreement; and leave to amend **GRANTED** as to BANA to the extent Lansdown has facts alleging BANA, particularly, breached the Deed of Trust, Settlement Agreement, or Memorandum of Understanding. Leave to amend is otherwise **DENIED**. If Lansdown chooses to amend, her Third Amended Complaint shall be filed within 30 days of this order.

**IT IS SO ORDERED.**

Dated: January 25, 2023

THOMAS S. HIXSON
United States Magistrate Judge