UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELISSA LANSDOWN,<br><br>Plaintiff,<br><br>v.<br><br>BAYVIEW LOAN SERVICING, LLC, et al.,<br><br>Defendants. | Case No. 22-cv-00763-TSH<br><br>**ORDER RE: MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 59, 63 |

## I. INTRODUCTION

Melissa Lansdown brings this breach of contract case against Bayview Loan Servicing, LLC, Newrez, LLC dba Shellpoint Mortgage Servicing, LLC, Bank of America, N.A. ("BANA"), and the Bank of New York Mellon related to the financing of real property located at 1670 Chiquita Road, Healdsburg, California 95448 (the "Property"). Pending before the Court are a Motion to Dismiss filed by BANA (ECF No. 59, "BANA Mot.") and a Motion to Dismiss filed by Bayview, Shellpoint and the Bank of New York Mellon (ECF No. 63, "Bayview Mot."), both pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court finds these matters suitable for disposition without oral argument and **VACATES** the April 13, 2023 hearing. For the reasons stated below, the Court **GRANTS IN PART AND DENIES IN PART** Bayview, Shellpoint and the Bank of New York Mellon's motion and **GRANTS** BANA's motion.[1]

---

[1] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 7, 13, 25, 30, and 53.

## II. BACKGROUND

**A.     Factual Background**

On April 25, 2001, Lansdown and Ellis Greenberg executed a Deed of Trust securing a Note for $375,000 on the Property. Third Am. Compl. ("TAC") ¶¶ 4, 20, ECF No. 58; *id.*, Ex. 1 (Deed of Trust). In 2003 Greenberg executed a Quit-Claim Deed of his interest to Lansdown. *Id.* ¶ 20 & Ex. 2 (Quit-Claim Deed).

On November 1, 2009, Lansdown fell behind on her mortgage payments "due to [BANA] falsely inducing her to skip mortgage payments in order to qualify for a loan modification," telling her "she had to be three months' behind in mortgage payments to qualify for a loan modification." *Id.* ¶¶ 23-24. On February 18, 2010, a Notice of Default was recorded against the Property with the Bank of New York Mellon named as the creditor. *Id.* ¶ 26. "At some point in the future," BANA transferred the servicing rights to Bayview. *Id.* Bayview continued to attempt to foreclose on the real property for several years. *Id.* ¶ 27.

On March 1, 2016, Lansdown filed a lawsuit in Sonoma County Superior Court against Bayview and BANA. *Id.* ¶ 27. The three parties subsequently signed a Memorandum of Understanding Re Settlement ("MOU") on December 19, 2018. *Id.* & Ex. 3 (MOU). The parties agreed that payments of principal and interest on the Property would be $2,328.79. MOU ¶ 1.

On January 28, 2019, Bayview sent Lansdown a Confidential Settlement Agreement and Loan Modification Agreement. *Id.* ¶ 28 & Ex. 4. Lansdown alleges the Settlement Agreement was "substantively unconscionable, because they included amounts of money that were not owed – overcharging principal, foreclosure charges, property tax that were capitalized into the principal, so that Plaintiff was paying interest on money not owed. $19,000 of real property taxes." *Id.* ¶ 29. She further alleges what she had already paid "had not been credited to her," it "required Greenberg's signature, which had not been previously agreed upon," and "[t]he proposed agreement involved surprise as the terms were changed afterward, and because of complex provisions with technical jargon. Those terms were also deceptive as they stated the interest rate was 4.79%, when it was 9.7%." *Id.*

Lansdown made payments according to the MOU for February and March 2019 of

$2,328.73. *Id.* ¶ 30. When her objections to the proposed settlement agreement were "rejected and made futile," she signed the Settlement Agreement on April 3 and made the April payment in the amount of $2,898.79. *Id.* ¶ 31 & Ex. 6 (Settlement Agreement). However, on April 25 Bayview's attorney sent Lansdown's attorney an email stating that Bayview was in receipt of "a very long past-due" monthly payment, but it was untimely and insufficient to bring the account current "under both the original loan terms and the proposed modified terms." *Id.* ¶ 32 & Ex. 7. Bayview gave Lansdown six days to return the fully executed Loan Modification Agreement and submit all past-due monthly payments under that agreement. Lansdown signed the Loan Modification Agreement on May 13 and sent payments in the amount of $11,864 for the months of February through May. *Id.* ¶ 33 & Ex. 8 (Loan Modification Agreement). Between February 2019 and August 2019, Lansdown made seven payments towards the Property. *Id.* ¶¶ 33-34. However, Bayview refused some of Lansdown's payments and attempted to foreclose on the Property. *Id.* ¶ 35.

Lansdown subsequently filed another case in Sonoma County and, on January 8, 2020, obtained a Temporary Restraining Order which prevented foreclosure on the Property. *Id.* ¶ 36 & Ex. 11 (TRO). However, Bayview continued to schedule a Trustees Sale of the Property on January 9. *Id.* ¶ 39.

On January 23, 2020, Bayview transferred servicing of Lansdown's loan to Shellpoint, after which "Bayview and Shellpoint" continued to reschedule a Trustees Sale of the Property February 6, April 16, July 9, and September 16. *Id.* ¶ 37, 39. On July 29, 2020, the Sonoma County Superior Court granted Lansdown's Motion for Preliminary Injunction. *Id.* ¶ 38 & Ex. 13. On September 21 Bayview's attorney got the foreclosure sale cancelled. *Id.* ¶ 40.

**B.  Procedural Background**

    **1.  Original Complaint and First Amended Complaint**

On February 6, 2022, Lansdown filed the instant action against Bayview, Shellpoint, and DOES 1-10. ECF No. 1. On April 25 she filed a First Amended Complaint. ECF No. 17. On May 13 Lansdown filed another First Amended Complaint ("FAC") naming Defendants Bayview, Shellpoint, BANA, and the Bank of New York Mellon. ECF No. 21. The FAC alleged the

3

1   following causes of action: 1) violation of Federal Debt Collection Protection Act (against

2   Bayview); 2) violation of California's Rosenthal Act (against Bayview); 3) intentional infliction of

3   emotional distress ("IIED") (against Bayview); 4) breach of contract (against Bayview); 5)

4   violation of the Federal Debt Collection Protection Act (against Shellpoint); 6) violation of the

5   Rosenthal Act (against Shellpoint); 7) IIED (against Shellpoint); 8) breach of contract (against

6   Shellpoint); and 9) rescission (against all defendants). ECF No. 21.

7   On May 9, 2022, Bayview and Shellpoint filed a motion to dismiss. ECF No. 18. On June

8   6 BANA also filed a motion to dismiss. ECF No. 31. On September 13 the Court issued an order

9   granting Bayview and Shellpoint's motion as to the causes of action for violation of the Fair Debt

10  Collection Protection Act, the Rosenthal Act, and IIED, with leave to amend. ECF No. 39;

11  *Lansdown v. Bayview Loan Servicing, LLC*, 2022 WL 4227245, at *1 (N.D. Cal. Sept. 13, 2022).

12  The Court denied their motion as to Lansdown's claims for breach of contract and recission. The

13  Court also granted BANA's motion to dismiss Lansdown's recission claim against it.

### 2. Second Amended Complaint

15  On October 12, 2022, Lansdown filed a Second Amended Complaint ("SAC") naming

16  Defendants Bayview, Shellpoint, BANA, and the Bank of New York Mellon. ECF No. 41. The

17  SAC alleged the following causes of action: 1) IIED (against Bayview and BANA); 2) breach of

18  contract (against Bayview and BANA); 3) IIED (against Shellpoint); and 4) breach of contract

19  (against Shellpoint).

20  On October 26 Bayview, Shellpoint, and the Bank of New York Mellon filed a motion to

21  dismiss. ECF No. 43. On December 9 BANA also filed a motion to dismiss. ECF No. 49.

22  On December 20 Lansdown filed a Notice of Voluntary Dismissal of the Bank of New

23  York Mellon. ECF No. 51.

24  On January 25, 2023, the Court 1) granted Bayview and Shellpoint's motion as to

25  Lansdown's IIED claims without leave to amend, 2) granted the motion as to Lansdown's breach

26  of contract claim against Bayview as to the Settlement Agreement and the Loan Modification

27  agreement with leave and denied the motion as to the MOU and Deed of Trust, 3) granted

28  BANA's motion as to Lansdown's IIED claims without leave to amend, and 4) granted BANA's

4

1  motion as to Lansdown's breach of contract claim with leave to amend in the event she "has facts
2  alleging that BANA, in particular, breached the Deed of Trust, Settlement Agreement, or
3  Memorandum of Understanding." ECF No. 56 (SAC Order); *Lansdown v. Bayview Loan
4  Servicing, LLC*, 2023 WL 411348, at *4 (N.D. Cal. Jan. 25, 2023) ("*Lansdown II*").

### 3. Third Amended Complaint

On February 23, 2023, Lansdown filed the operative TAC, alleging two causes of action: 1) breach of contract against Bayview and BANA; and 2) breach of contract against Shellpoint.

#### a. Allegations Against Bayview

Lansdown alleges Bayview breached the Loan Modification Agreement by initiating a foreclosure action and by overcharging her interest, late fees and foreclosure costs when she was not in default under the provisions of the deed of trust. TAC ¶ 42. She further alleges "Bayview repudiated the Confidential Settlement Agreement and Release by refusing to sign it and initiating another foreclosure action." *Id.* ¶ 43.

Lansdown alleges Bayview is attempting to foreclose on the basis of the Deed of Trust, but that she is not in default of her legal obligations because she tendered payment in 2010 and 2019. *Id.* ¶ 49. She maintains that Bayview "chose not to honor the settlement by refusing plaintiffs [sic] tender but remain bound by the terms of the deed which can't be enforced because they refuse to cure their material failure to perform." *Id.* As such, "Bayview's conduct precludes them from enforcing the contract because it placed them in default of their legal obligations." *Id.*

As to the MOU, Lansdown alleges that "[w]hen Bayview refused Plaintiff's offer to cure the alleged missed payments that was a material breach and they lost whatever protection it afforded them," and that "[d]ue to Bayview's material failure to perform there is no authority to enforce the contract so the scheduled trustee sales were a wrongful foreclosure." *Id.* ¶¶ 51-52.

#### b. Allegations Against BANA

Lansdown notes the Settlement Agreement reflects that "BANA was the former servicer of the loan." *Id.* ¶ 1. She alleges BANA breached the Deed of Trust by initiating the foreclosure action and noticing a Trustees sale for February 18, 2010 and October 03, 2019. *Id.* ¶ 44. BANA also breached the provisions of the Deed of Trust "through the actions of its agents Bayview and

1  Shellpoint who over charged plaintiff interest, late fees and other foreclosure related costs when
2  she was not in default." *Id.* Lansdown also alleges BANA breached the MOU "by refusing
3  plaintiffs [sic] tender of performance and noticing a Trustees sale for October 03,2019. BANA
4  also breached the provisions of the Memorandum of Understanding through the actions of its
5  agents Bayview and Shellpoint who over charged plaintiff interest, late fees and other foreclosure
6  related costs when she was not in default." *Id.* ¶ 45. Lansdown claims BANA "repudiated the
7  Confidential Settlement Agreement" because it refused to sign the document and "initiating
8  another foreclosure action" without specifying a date or time of the alleged foreclosure action. *Id.*
9  ¶ 46.

    **c.** **Allegations Against Shellpoint**

Lansdown alleges Shellpoint breached the Loan Modification Agreement "by initiating a foreclosure action by overcharging plaintiff interest, late fees and foreclosure costs when she was not in default under the provisions of the deed of trust." *Id.* ¶ 58. She further alleges Shellpoint "repudiated the Confidential Settlement Agreement and Release by refusing to sign it and initiating another foreclosure so there is no enforceable agreement." *Id.* ¶ 59. She maintains Shellpoint "has been overcharging principal, interest and late fees and other foreclosure costs, which it has no right to enforce," and "Shellpoint's conduct precludes it from enforcing the contract, because it placed it in default of its legal obligations." *Id.* ¶ 60.

    **4.** **Present Motions**

On March 9, 2023, Bayview, Shellpoint and the Bank of New York Mellon filed their motion to dismiss, arguing the TAC should be dismissed as to Lansdown's claims based on the MOU, Settlement Agreement, and Loan Modification Agreement, as well as to any claims brought against the Bank of New York Mellon. They do not seek dismissal of Lansdown's breach of contract claim against Bayview and Shellpoint under the Deed of Trust. Lansdown filed an opposition (ECF No. 65, "Bayview Opp'n") and Bayview, Shellpoint and the Bank of New York Mellon filed a reply (ECF No. 68).[2]

---

[2] Bayview, Shellpoint and the Bank of New York Mellon filed their reply on April 3, 2023. Pursuant to Civil Local Rule 7, any reply was due March 30. However, in the interest of

6

1    On the same day, BANA filed its motion, arguing Lansdown's breach of contract claim
2 against it must be dismissed in its entirety. Lansdown filed an opposition (ECF No. 66, "BANA
3 Opp'n") and BANA filed a reply (ECF No. 67).

### III.   LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim. A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (citation and quotation marks omitted). Rule 8 provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Twombly*, 550 U.S. at 555 (quotations and citation omitted).

In considering a motion to dismiss, the court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citations and quotations omitted). However, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated

---

achieving a full and just adjudication of the motion at issue, the Court shall exercise its discretion to consider the arguments raised in their reply.

1  failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing

2  party . . ., [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876,

3  892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182

4  (1962)).

### IV.   BAYVIEW, SHELLPOINT, & BANK OF NEW YORK MELLON'S MOTION

#### A.   Claims Against The Bank of New York Mellon

The Bank of New York Mellon moves to dismiss Lansdown's claims, if any, against it. Bayview Mot. at 7. Lansdown originally substituted the Bank of New York Mellon as a party in place of Doe 2, but she subsequently filed a notice of voluntary dismissal on December 20, 2022. *See* ECF No. 51 ("I voluntarily dismiss: (1) Defendant, New York Bank Mellon ONLY."). As the TAC again names it as a defendant, the Bank of New York Mellon requests the Court dismiss any claims against it. Bayview Mot. at 7. Lansdown fails to address Bank of New York Mellon's argument in her opposition and, as the Court indicated in its previous order dismissing the SAC, a failure to respond in an opposition to an argument constitutes waiver or abandonment, and thus "concedes the argument." *Lansdown II*, 2023 WL 411348, at *4 (citing *Linder v. Golden Gate Bridge, Highway & Transportation Dist.*, 2015 WL 4623710, at *4 (N.D. Cal. Aug. 3, 2015) ("[F]ailure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment . . . ."). Further, Lansdown previously dismissed the Bank of New York Mellon and she included no allegations specific to it in her TAC. Accordingly, the Court **GRANTS** the motion as to any claims brought against the Bank of New York Mellon.

#### B.   Breach of Contract Claims Against Bayview and Shellpoint

Bayview and Shellpoint argue Lansdown's breach of contract claim fails against them for several reasons: 1) she fails to plead facts alleging Shellpoint assumed obligations under the alleged contracts; 2) she has not sufficiently plead breach of the MOU; 3) she fails to plead Bayview was a party to the Settlement Agreement and, even if she did, the claims fail because she admits it was unenforceable; 4) she fails to plead Bayview was a party to the Loan Modification Agreement and, even if she did, the claims fails because she admits it was unenforceable; and 5) her claim as to the modification fails because she concedes that the signature of all parties was a

1 condition precedent to the agreement.

2 The elements of a cause of action for breach of contract are: 1) the existence of the
3 contract; 2) performance by the plaintiff or excuse for nonperformance; 3) breach by the
4 defendant; and 4) damages. *First Commercial Mortg. Co. v. Reece*, 89 Cal. App. 4th 731, 745
5 (2001).

### 1. Shellpoint's Assumption of Obligations Under the Alleged Contracts

In its SAC Order, the Court noted Lansdown did not allege that Shellpoint is a party to a contract but instead that Shellpoint assumed the servicing of her loan. *Lansdown II*, 2023 WL 411348, at *4. The Court also noted Lansdown did not make clear which contracts or obligations Shellpoint allegedly succeeded. *Id.* As such, the Court found the breach of contract claim was insufficiently pled and granted Lansdown leave to amend "to the extent she may plead facts alleging Shellpoint became successor to the contracts at issue." *Id.*

In her TAC, Lansdown included the following new allegations:

> Shellpoint is the successor to Bayview in servicing the loan and has correspondingly assumed Bayview' [sic] contractual obligations. Shellpoint succeeded to the following contractual obligation: collection of payments pursuant to the provisions of the deed of trust and enforcement of the deed of trust. Shellpoint was the agent of BANK OF AMERICA, N.A., because it conducted loan servicing for BANK OF AMERICA, N.A.

TAC ¶ 6. Bayview and Shellpoint argue this "serves as a conclusory allegation of succession with no factual support as relates to any of the four potential contracts at issue." Bayview Mot. at 8. They further argue: "At best, the allegations made by Plaintiff allege only that Shellpoint was successor to Bayview's interest in the DOT as the DOT is the only alleged contract included in Plaintiff's assertion." *Id.* at 9.

A breach of contract claim requires "privity of contract between the plaintiff and the defendant." *Simoni v. Am. Media, Inc.*, 2014 WL 12597640, at *3 (C.D. Cal. July 22, 2014), *aff'd*, 673 F. App'x 782 (9th Cir. 2017) (striking a breach of contract claim where the plaintiff had not met his burden of demonstrating privity between himself and the defendant). Here, as before, Lansdown does not allege that Shellpoint was a party to any of the alleged contracts. None of the documents (the MOU, the Settlement Agreement, the Loan Modification Agreement, or the Deed

1   of Trust) were signed by Shellpoint or referenced Shellpoint in any manner.

2   However, it is possible for Shellpoint to be held liable as the successor to Bayview in servicing the loan, thereby assuming Bayview's contractual obligations. *See, e.g.*, *Randell v. Flagstar Bank FSB*, 2015 WL 2159595, at *7-8 (E.D. Cal. May 7, 2015) (finding plaintiff could bring a claim against the new loan servicer for breach of the loan modification agreement entered into by the prior loan servicer); *Rampp v. Ocwen Fin. Corp.*, 2012 WL 2995066, at *3 (S.D. Cal. July 23, 2012) ("Although Ocwen Loan Servicing, LLC, did not itself sign the modification agreement, it presumably is bound by modification agreements entered into [by] . . . the prior servicer."); *Lewis v. Bank of America, N.A.*, 2013 WL 7118066, at *3-4 (C.D. Cal. Dec.18, 2013) (finding claims for declaratory relief and violation of California's Unfair Competition law permissible based on allegations that the successor servicer acquired a promissory note attached to the subject property). As Lansdown's allegations are similar, the Court finds she can bring a claim against Shellpoint for breach of contract based on its position as a successor servicer. Accordingly, the Court **DENIES** the motion as to Lansdown's claim that Shellpoint assumed obligations under the alleged contracts.

### 2. Breach of the Memorandum of Understanding

Bayview and Shellpoint argue any breach of contract claim related to the MOU fails because it includes a condition precedent that requires the parties to participate in a conference call with mediator Robert Pohls prior to filing any legal action. Bayview Mot. at 12 (citing MOU ¶ 17 ("In the event the parties have a dispute regarding the terms of this Settlement Agreement, Robert Pohls has agreed to assist the parties by way of a conference call to resolve the same. The parties agree to utilize such services as a condition precedent to any court action.")). However, in the SAC Order, the Court determined the SAC "sufficiently alleges performance of the Memorandum of Understanding. The SAC states that Lansdown 'has performed all conditions, covenants, and promises required,' 'has been performing the Memorandum of Understanding,' and 'is not in default under legal obligations.'" *Lansdown II*, 2023 WL 411348, at *5. As the TAC includes these same allegations, *see* TAC ¶¶ 1, 41, the Court again finds Lansdown's allegations suffice at this stage. *See Kiernan v. Zurich Companies*, 150 F.3d 1120, 1124 (9th Cir. 1998) (finding

1    allegation that incident occurred "while the policy was in full force and effect" sufficient to plead
2    plaintiff satisfied conditions precedent)); *Archer Western Contractors, Ltd. v. Liberty Mutual Ins.*
3    *Co.*, 2014 WL 12607699, at *4 (C.D. Cal. Aug. 13, 2014) ("[U]nder Rule 9(c)'s liberal pleading
4    standard, AWC's allegation that it 'performed all covenants and conditions required of it under the
5    National Union Policy' is sufficient to survive a motion to dismiss."); *Textainer Equip. Mgmt.*
6    *(U.S.) Ltd. v. TRS Inc.*, 2007 WL 1795695, at *2 (N.D. Cal. June 20, 2007) ("[P]laintiff pleads that
7    it 'has performed all obligations under the Lease Agreement due and owing to defendants and/or
8    Lessee, except for those which Plaintiff was prevented or excused from performing' . . . .
9    [Plaintiff] has pleaded all the necessary elements . . . . More detail is not necessary at this time.").
10   The Court therefore **DENIES** Bayview and Shellpoint's motion as to Lansdown's breach of
11   contract claim as to the MOU.

12          **3.      Breach of the Settlement Agreement**
13          In its previous order, the Court found it was unclear whether Lansdown alleged a claim for
14   breach of contract based on the Settlement Agreement and therefore granted leave to clarify these
15   allegations. *Lansdown II*, 2023 WL 411348, at *5-6, 9 ("Lansdown does not contend that
16   Bayview is bound by the Settlement Agreement or even make clear that the breach of contract
17   claim includes breach of the Settlement Agreement."). Bayview and Shellpoint now move to
18   dismiss on the basis that Lansdown failed to cure this deficiency. Bayview Mot. at 13-14.
19          The first element required for breach of contract is the existence of a contract. *Reece*, 89
20   Cal. App. 4th at 745. "An essential element of any contract is the consent of the parties, or mutual
21   assent." *Donovan v. RRL Corp.*, 26 Cal. 4th 261, 271 (2001) (citing Cal. Civ. Code §§ 1550(2),
22   1565(2)). "[W]here the existence . . . of a contract or the terms thereof is the point in issue, and
23   the evidence is conflicting or admits of more than one inference, it is for the . . . trier of the facts to
24   determine whether the contract did in fact exist." *Vita Planning & Landscape Architecture, Inc. v.*
25   *HKS Architects, Inc.*, 240 Cal. App. 4th 763, 771 (2015), *review denied* (Jan. 13, 2016) (alteration
26   in original) (quotation and citation omitted).
27          The Court finds Lansdown has not sufficiently alleged that the Settlement Agreement is a
28   contract. There is no dispute that Bayview did not sign the agreement. This, on its own, does not

necessarily mean it was not a contract. *See J. A. Jones Const. Co. v. Plumbers & Pipefitters Loc. 598*, 568 F.2d 1292, 1294-95 (9th Cir. 1978) ("[F]ailure of one of the parties to sign the agreement does not necessarily prevent the nonsigning party from being bound by the agreement."). At the same time, however, Lansdown's own TAC specifically alleges that the Settlement Agreement is unenforceable. TAC ¶ 28 ("The Confidential Settlement Agreement and proposed Loan Modification were different in significant respects from the Memorandum of Understanding, so they are not enforceable."). She repeats this in her opposition. Bayview Opp'n at 5 ("The Confidential Settlement Agreement and proposed Loan Modification were different in significant respects from the Memorandum of Understanding, so they are not enforceable."). Thus, Lansdown concedes that the contract she contends was breached is itself an unenforceable agreement. As such, she fails to plead the existence of a contract between herself and Bayview and/or Shellpoint when it comes to the Settlement Agreement. Accordingly, the Court **GRANTS** the motion as to any breach of contract claim based upon the Settlement Agreement.

### 4. Breach of the Loan Modification Agreement

In its previous order, the Court found it was unclear whether Lansdown "even intends to plead breach of contract based on the Loan Modification Agreement" and therefore granted leave to clarify her allegations as to any claim based on it. *Lansdown II*, 2023 WL 411348, at *6. Bayview and Shellpoint now argue she has failed to do so, and ay claim based on the Loan Modification Agreement must therefore be dismissed. Bayview Mot. at 14-16.

The Court finds Lansdown has not sufficiently alleged that the Loan Modification Agreement is a contract. As with the Settlement Agreement, there is no dispute that Bayview did not sign the agreement. Further, Lansdown's own TAC specifically alleges that the Loan Modification Agreement is unenforceable. TAC ¶ 28 ("The Confidential Settlement Agreement and proposed Loan Modification were different in significant respects from the Memorandum of Understanding, so they are not enforceable."). She repeats this in her opposition. Bayview Opp'n at 5 ("The Confidential Settlement Agreement and proposed Loan Modification were different in significant respects from the Memorandum of Understanding, so they are not enforceable."). Thus, Lansdown again concedes that the contract she contends was breached is itself an

1    unenforceable agreement. As such, she fails to plead the existence of a contract between herself
2    and Bayview and/or Shellpoint when it comes to the Loan Modification Agreement. Accordingly,
3    the Court **GRANTS** the motion as to any breach of contract claim based upon the Loan
4    Modification Agreement.

**5.    Summary**

In summary, the Court **GRANTS** the motion as to any claims brought against Bank of New York Mellon. The Court **DENIES** the motion as to Lansdown's claim that Shellpoint assumed obligations under the alleged contracts. The Court **GRANTS** the motion as to any causes of action against Bayview and Shellpoint related to the Settlement Agreement and Loan Modification Agreement, but **DENIES** the motion as to any cause of action related to the MOU.

## V.    BANA'S MOTION

BANA raises several arguments regarding Lansdown's breach of contract claim: 1) Lansdown cannot hold it liable for the alleged conduct of Bayview and Shellpoint because the TAC does not establish an agency relationship between BANA and Bayview and/or Shellpoint; 2) Lansdown has failed to allege the MOU, the Settlement Agreement, or the Loan Modification Agreement are valid contracts; 3) the statute of limitations bars Lansdown's breach of contract claim; 4) Lansdown fails to allege how BANA breached any specific provision of the alleged contracts; and 5) the MOU and Settlement Agreement contain general releases of all claims.

**A.    Lansdown's Failure to Respond to BANA's Arguments**

As a preliminary matter, Lansdown largely fails to address any of BANA's arguments in her opposition, focusing instead on restating the facts as alleged in her TAC. Lansdown thus concedes these arguments. *Linder*, 2015 WL 4623710, at *4 ("[F]ailure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment . . . ."). Despite this, the Court shall consider BANA's arguments in turn.

**B.    Agency Relationship**

BANA argues Lansdown fails to establish any elements of agency, as she does not allege BANA could legally control Bayview or Shellpoint. BANA Mot. at 6.

Under California law, an agency relationship establishes liability for one party for the acts

13

of another. *See Akins v. Seterus, Inc.*, 2019 WL 4243221, at *4 (E.D. Cal. Sept. 6, 2019) (citing *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 480 (9th Cir. 1991); *E. & J. Gallo Winery v. EnCana Energy Servs., Inc.*, 2008 WL 2220396, at *6 (E.D. Cal. May 27, 2008)). An agency relationship can be created by agreement between one party ("the principal") and another party ("the agent"), or it can be founded on "ostensible authority." Cal. Civ. Code §§ 2295, 2298-2300; *Deutsch v. Masonic Homes of Cal., Inc.*, 164 Cal. App. 4th 748, 781 (2008). An agency is ostensible when a principal causes a third party to believe they employ another party as the principal's agent; however, the principal does not actually employ the purported agent. *Van Maanen v. Youth With A Mission-Bishop*, 852 F. Supp. 2d 1232, 1250 (E.D. Cal. 2012) (citing Cal. Civ. Code § 2300).

The essential characteristics of an agency relationship are "(1) An agent or apparent agent holds a power to alter the legal relations between the principal and third persons and between the principal and himself; (2) an agent is a fiduciary with respect to matters within the scope of the agency; and (3) a principal has the right to control the conduct of the agent with respect to matters entrusted to him." *Garlock Sealing Techs., LLC v. NAK Sealing Techs. Corp.*, 148 Cal. App. 4th 937, 964 (2007) (internal quotation omitted). Applying this analysis, "the primary test" of an agency relationship is the principal's legal right to control the agent's actions. *Cox v. Kaufman*, 77 Cal. App. 2d 449, 452 (1946). "Whether a person performing work for another is an agent . . . depends primarily upon whether the one for whom the work is done has the legal right to control the activities of the alleged agent." *Malloy v. Fong*, 37 Cal. 2d 356, 370 (1951). "To sufficiently plead the existence of an agency relationship, a plaintiff must allege facts demonstrating the principal's control over its agent." *Akins*, 2019 WL 4243221, at *4 (citing *Mazal Group, LLC v. Espana*, 2017 WL 6001721, at *3 (C.D. Cal. Dec. 4, 2017)).

Lansdown alleges Bayview was the agent of BANA "because Bayview conducted loan servicing for BANA." TAC ¶ 5. She explains loan servicers and loan servicing, and she alleges Bayview succeeded BANA's contractual obligations pursuant to the Deed of Trust. *Id.* Turning to Shellpoint, Lansdown alleges that because Shellpoint is the successor to Bayview and assumed Bayview's contractual obligations, it is another agent of BANA. *Id.* ¶ 6. She alleges Shellpoint

14

"conducted loan servicing for BANK OF AMERICA, N.A." *Id.*

The Court acknowledges that the existence of an agency relationship is a question of fact. *See Akins*, 2019 WL 4243221, at *4. However, the Court can decide whether the allegations in the TAC are sufficient to plead an agency relationship without making the ultimate factual determination of whether the agency relationship actually exists. *Id.* "Moreover, a court may make a legal determination about the existence of an agency relationship when the evidence conclusively shows an agency relationship either exists or not." *See id.* (citing *Olney v. Job.com*, 2014 WL 1747674, at *9 (E.D. Cal. May 1, 2014); *Pistone v. Superior Court*, 228 Cal. App. 3d 672, 679 (1991) ("The existence or absence of agency ordinarily poses a question of fact. Unless the evidence permits only one inference, the question is one for the trier of fact."); *Markow v. Rosner*, 3 Cal. App. 5th 1027, 1039 (2016) ("Although the existence of an agency relationship is usually a question of fact, it 'becomes a question of law when the facts can be viewed in only one way.'")).

Here, Lansdown's allegations fail to establish any elements of agency, express or implied, let alone the "primary test," as she at no point alleges BANA could legally control Bayview or Shellpoint. *See Garlock Sealing Techs.*, 148 Cal. App. 4th at 964; *Malloy*, 37 Cal. 2d at 370. The TAC pleads no facts indicating any agency relationship between Bayview and BANA beyond boilerplate language. TAC ¶ 17 ("[E]ach Defendant sued herein in relation to the Real Property they claim an interest in was the agent and/or employee of each of the remaining Defendants thereof, and at all times was acting within the purpose and scope of such agency and/or employment. All Defendants have joint and several liability."). This language does not plausibly allege an agency relationship to make out a breach of contract claim against BANA. *See Church Mut. Ins. Co., S.I. v. GuideOne Specialty Mut. Ins. Co.*, 72 Cal. App. 5th 1042, 1061-62 (2021), *as modified on denial of reh'g* (Jan. 11, 2022) (listing the elements to establish agency in California); *Mazal Grp., LLC*, 2017 WL 6001721, at *3 (dismissing a breach of contract claim premised on an agency relationship where the complaint alleged "each Defendant was an agent of the other Defendant and was acting in the course of their agency at all relevant times."). Indeed, allegations that simply describe the transfer of loan servicing from one party to another are insufficient to

15

support an agency relationship. *See Akins*, 2019 WL 4243221, at *5 (finding no agency relationship between BANA and defendant when no facts establishing express or implied connection were alleged "beyond Defendant's purchase of Plaintiffs' loan in December 2013 from BANA.").

Instead of responding to BANA's arguments, Lansdown's opposition argues that BANA is liable for Bayview's conduct because "Bayview repeatedly ratified the conduct of Bank of America" and that her tender "stopped defendants claims for interest, late charges, and foreclosing costs." BANA Opp'n at 7-8. The opposition does not indicate the TAC establishes the necessary elements for an agency relationship. As Lansdown alleges that BANA is liable through a theory of agency relationship for Bayview's and/or Shellpoint's conduct, she must establish an agency relationship between them, and she has failed to do so. As such, BANA cannot be liable for Bayview's and/or Shellpoint's conduct. Accordingly, the Court **GRANTS** BANA's motion to the extent Lansdown's breach of contract claim is premised on the alleged breaches of Bayview and Shellpoint.

## C. Memorandum of Understanding

Like Bayview and Shellpoint, BANA argues the MOU is not a valid contract because Lansdown fails to establish she satisfied the condition precedent that she agreed to engage in alternative dispute resolution prior to filing this action. BANA Mot. at 7-8. However, as discussed above, the Court has already determined that Lansdown "sufficiently alleges performance of the Memorandum of Understanding. The SAC states that Lansdown 'has performed all conditions, covenants, and promises required,' 'has been performing the Memorandum of Understanding,' and 'is not in default under legal obligations.'" *Lansdown II*, 2023 WL 411348, at *5. As the TAC includes these same allegations, *see* TAC ¶¶ 1, 41, the Court again finds Lansdown's allegations suffice at this stage. *See Kiernan*, 150 F.3d at 1124; *Archer Western Contractors, Ltd.*, 2014 WL 12607699, at *4; *Textainer Equip. Mgmt. (U.S.) Ltd.*, 2007 WL 1795695, at *2. Regardless, as to BANA, without any allegations showing an agency relationship, Bayview's alleged breach of the MOU cannot be attributed to BANA, and there are no other allegations concerning how BANA itself breached the MOU. Accordingly, the Court

1   **GRANTS** BANA's motion as to the MOU.

2   **D.   Settlement Agreement**

3   BANA argues the Settlement Agreement is not an enforceable contract as between it and
4   Lansdown because the document is unsigned by BANA, and Lansdown has not alleged mutual
5   assent. BANA Mot. at 9. In the TAC, Lansdown repeatedly states BANA did not sign the
6   Settlement Agreement. TAC ¶ 1 ("Defendants refused to sign the Confidential Settlement
7   agreement."); *id.* ¶ 37 ("On or about January 23, 2020, after the settlement documents were
8   negotiated but not signed by all parties . . ."); *id.* ¶ 46 ("BANA repudiated the Confidential
9   Settlement Agreement and Release prepared by its counsel by refusing to sign it . . .").
10  Lansdown's own exhibits establish that BANA (and Bayview and Shellpoint) did not sign the
11  document. *Id.*, Ex. 6. Further, Lansdown fails to address BANA's argument that the Settlement
12  Agreement is an unenforceable contract, and thus concedes it. *See Linder*, 2015 WL 4623710, at
13  *4. Accordingly, the Court **GRANTS** BANA's motion as to breach of the Settlement Agreement.

14  **E.   Loan Modification Agreement**

15  BANA argues that it was not a party to the Loan Modification Agreement and therefore
16  cannot be liable for any alleged breach of this agreement. Mot. at 9. Lansdown fails to address
17  BANA's argument and thus concedes it. *See Linder*, 2015 WL 4623710, at *4. Regardless, a
18  cause of action for breach of contract requires privity of contract. *Simoni v. Am. Media, Inc.*, 2014
19  WL 12597640, at *3 (C.D. Cal. July 22, 2014). Here, BANA is not listed as a party to the Loan
20  Modification Agreement. TAC, Ex. 8. Further, the MOU explicitly states that BANA is not a
21  party. TAC, Ex. 3, ¶ 5 ("The parties acknowledge and understand that Defendant Bank of
22  America, N.A. ('BANA') is in no way a party to the Modification."). Thus, because there is no
23  privity of contract between BANA and Lansdown, any breach of contract claim against BANA
24  based on the Loan Modification Agreement fails. *See Kokopelli Cmty. Workshop Corp. v. Select*
25  *Portfolio Servicing, Inc.*, 2011 WL 3490136, at *8 (S.D. Cal. Aug. 10, 2011) (dismissing breach
26  of contract claim against a particular defendant where the contract was not alleged to be between
27  the plaintiff and that defendant). And, as discussed above, a claim of breach based on an agent
28  relationship between BANA and Bayview also fails as the SAC does not allege sufficient facts for

17

1  such a relationship to be plausible.

2  Accordingly, the Court finds Lansdown cannot state a claim against BANA based on the Loan Modification Agreement because BANA was not a party to this agreement. The Court therefore **GRANTS** BANA's motion as to Lansdown's breach of contract claim based on the Loan Modification Agreement.

### F.  Statute of Limitations

Even if the Court were to find that Lansdown has stated a plausible claim against BANA based on any of the alleged contracts, BANA also argues her claims are time-barred. BANA Mot. at 10. Under California law, "[t]he ordinary statute of limitations for breach of a written contract is four years." Cal. Civ. Proc. Code § 337; *Vu v. Prudential Prop. & Cas. Ins. Co.*, 26 Cal. 4th 1142, 1148 (2001); *AGK Sierra De Montserrat, L.P. v. Comerica Bank*, 2023 WL 606933, at *48 (E.D. Cal. Jan. 27, 2023).

Lansdown alleges BANA breached its contractual duties by initiating a foreclosure action and noticing a trustee's sale on February 18, 2010.[3] TAC ¶¶ 44-45. Nearly 12 years passed from this alleged conduct and the date Lansdown filed the initial complaint on February 6, 2022. As such, it is clear from the face of the pleadings that the allegations attributable solely to BANA are time-barred. *See Wolf v. Mason-McDuffie Real Est., Inc.*, 2022 WL 2342648, at *2 (N.D. Cal. June 29, 2022) (dismissing contract claims when each of the causes of action asserted were time-barred). Thus, based on her own allegations, Lansdown cannot plausibly allege that BANA was servicing the Property during the time period in which she could state a breach of contract claim against it within the four-year statute of limitations period.

In her opposition, Lansdown does not directly address BANA's arguments, instead summarizing doctrines without providing analysis relevant to the facts of this case. For instance, Lansdown copies portions of *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1197-99 (2013) (without citing *Aryeh*), explaining the continuing violation and continuous accrual doctrines.

---

[3] Lansdown alleges "BANA breached the Deed of Trust by initiating the foreclosure action and noticing a Trustees sale for February 18, 2010 and October 03, 2019." TAC ¶ 44. However, as to the 2019 allegations, BANA had transferred servicing rights to Bayview and, as discussed above, Lansdown has failed to allege an agency relationship between the two.

18

1  BANA Opp'n at 10-12.  Lansdown also quotes language from *Ragland v. US Bank Nat'l Assn.*,
2  209 Cal. App. 4th 182 (2012.), Miller & Starr's secondary source on California Real Estate, and
3  various civil and commercial codes, *see* Opp. at 10-12, but she fails to explain how these doctrines
4  apply to the facts of this case, thus failing to rebut BANA's assertion that the statute of limitations
5  applies to its alleged wrongful conduct.  Accordingly, the Court finds the four-year statute of
6  limitations bars Lansdown's claim against BANA and therefore **GRANTS** BANA's motion to
7  dismiss.

## VI.   CONCLUSION

For the reasons stated above, the Court **ORDERS** as follows:

1) Bank of New York Mellon's motion to dismiss is **GRANTED**.

2) Bank of America, N.A.'s motion to dismiss is **GRANTED**.

3) Bayview Loan Servicing and Shellpoint Mortgage Servicing's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART.**  The Court **DENIES** the motion as to Lansdown's claim that Shellpoint assumed obligations under the alleged contracts.  The Court **GRANTS** the motion as to any causes of action against Bayview and Shellpoint related to the Settlement Agreement and Loan Modification Agreement, but **DENIES** the motion as to any cause of action related to the Memorandum of Understanding.

As the Court has previously granted Lansdown two opportunities to amend her claims, and it appears that further leave would be futile, dismissal is **WITHOUT LEAVE TO AMEND**.  *See Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir.1989) ("The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint."); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (Leave to amend should be denied when the court determines that "allegation[s] of other facts consistent with the challenged pleading could not possibly cure the deficiency.").

Bayview and Shellpoint shall file their answer(s) by April 27, 2023.  The Court shall conduct a Case Management Conference on May 11, 2023 at 10:00 a.m. by Zoom video conference.  The webinar link and instructions are located at

https://cand.uscourts.gov/judges/hixson-thomas-s-tsh/. This conference shall be attended by lead trial counsel. By May 4, 2023, the parties shall file a Joint Case Management Statement containing the information in the Standing Order for All Judges in the Northern District of California, available at: http://cand.uscourts.gov/tshorders. The Joint Case Management Statement form may be obtained at: http://cand.uscourts.gov/civilforms.

**IT IS SO ORDERED.**

Dated: April 12, 2023

THOMAS S. HIXSON
United States Magistrate Judge