UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELISSA LANSDOWN,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>BAYVIEW LOAN SERVICING, LLC, et al.,<br><br>　　　　Defendants. | Case No. 22-cv-00763-TSH<br><br>**ORDER RE MOTION FOR PRELIMINARY INJUNCTION**[1]<br><br>Re: Dkt. No. 94 |

Plaintiff Melissa Lansdown is moving for a preliminary injunction to stay the sale or attempted sale of her home at 1670 Chiquita Road, Healdsburg, CA 95448, during the pendency of this action. ECF No. 94. The Court held a hearing on the motion on December 11, 2023, and now issues this order.

## I. BACKGROUND

### A. 22-cv-763[2]

Lansdown filed civil action 22-763 on February 6, 2022. ECF No. 1. It is part of her long-running effort to prevent the foreclosure of her home. She alleges that in November 2009, when she began to experience difficulty making mortgage payments, she contacted Bank of America, N.A. ("BANA") to inquire about relief. She says she was told that she had to be three months' behind on her mortgage to qualify for relief, and the bank's agent allegedly told her not to make any mortgage payments while she was being evaluated for a mortgage modification. *Id*. ¶¶ 23, 24.

---

[1] This is a corrected version of the order that was filed at 5:02 p.m. on December 14, 2023. ECF No. 108.
[2] The parties to 22-cv-763 consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 7, 13, 25, 30 and 53.

1    Instead, she found herself in default and filed a lawsuit in Sonoma County Superior Court. *Id*. ¶¶

2    25, 26.  The lawsuit got resolved, or sort of got resolved, through some disputed settlement

3    documents, *see id*. ¶¶ 26-32, and Lansdown alleges that afterwards the loan servicers refused to

4    accept some of her payments and tried to foreclose. *Id*. ¶¶ 33-40.

     The operative pleading in this action is the Third Amended Complaint ("TAC").  ECF No. 58.  Following the Court's order on motions to dismiss (ECF No. 69), the following claims survive:  breach of contract against Bayview Loan Servicing, LLC ("Bayview") (the previous loan servicer) and Newrez, LLC d/b/a Shellpoint Loan Servicing, LLC ("Shellpoint") (the current loan servicer) under the April 25, 2001 deed of trust (*id*. at 6), and breach of contract against Bayview and Shellpoint under the December 19, 2018 Memorandum of Understanding that was one of the settlement documents that came out of the Sonoma County proceeding (*id*. at 11).

**B.    23-cv-2932[3]**

     Civil action 23-cv-2932 is basically a copycat case that Lansdown filed after Shellpoint recorded a December 22, 2022 notice of default and scheduled a trustees sale for June 21, 2023.  ECF No. 1 ¶ 19.  Judge Corley issued a temporary restraining order on June 20, 2023.  ECF No. 15.

     In 23-2932, there haven't been any motions to dismiss, so the original complaint at ECF No. 1 is the operative one, save that Plaintiff voluntarily dismissed Defendant ZBS Law, LLP.  ECF No. 22.  Count one, which is against all Defendants (Bayview, Shellpoint, and Bank of New York Mellon, N.A. ("BNYM")), seeks declaratory relief and an injunction to prevent the sale of Lansdown's home based on an alleged breach of the deed of trust and alleged defects in the notice of default.  23-2932 ECF No. 1 ¶¶ 18-67.  Count two, also against all Defendants, alleges that Shellpoint and Bayview breached the deed of trust, *id*. ¶ 70, and the Settlement Agreement (one of the settlement documents that came out of the Sonoma County action), *id*. ¶ 73.  Count three alleges that the Defendants violated the Fair Debt Collection Practices Act ("FDCPA"), *id*. ¶¶ 75-

---

[3] The parties to 23-cv-2932 consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos. 17, 18, 29.  As noted in the main text, ZBS Law, LLP, was named as a Defendant in the Complaint but was voluntarily dismissed by Plaintiff and is no longer a party.  ECF No. 22.

1   117. Count four alleges that the Defendants violated the Rosenthal Fair Debt Collection Practices

2   Act ("RFDCPA"), *id*. ¶¶ 118-20. And count five seeks an injunction, *id*. ¶ 121-29.

### C.   Consolidation Order

The Court related 23-2932 to 22-763, and on July 5, 2023, consolidated the two actions, terminated 23-2932, and instructed that all future filings be in 22-763.[4] ECF No. 82.[5] Lansdown has a pending motion to file a consolidated complaint. ECF No. 93. For purposes of ruling on the preliminary injunction motion, the Court assumes that the claims that survived dismissal in 22-763 and that were alleged in 23-2932 are the pending claims.

## II.   MOTION FOR PRELIMINARY INJUNCTION

On December 1, 2023, Lansdown filed an application for a temporary restraining order and a preliminary injunction to prevent a trustees sales that was scheduled for December 6, 2023, and to restrain Defendants from selling or attempting to sell her home during the pendency of this action. ECF No. 94-4. The Court issued a TRO the same day and then set a briefing schedule for the preliminary injunction motion. ECF Nos. 95, 97. Plaintiff filed a supplemental brief in support of her motion on December 6, 2023. ECF No. 99. Defendants filed an opposition to Plaintiff's December 1 filing on December 6, 2023. ECF No. 98. Defendants filed a further opposition to Plaintiff's December 6, 2023 brief on December 8, 2023. ECF No. 101. Plaintiff filed a reply on December 10, 2023. ECF No. 102. The Court held a hearing on December 11, 2023. In light of the Court's questions at the hearing, on December 11, 2023, the Court issued an order allowing the parties to file any supplemental briefing and declarations by noon on December 13, 2023. ECF No. 105. Both sides did so. ECF Nos. 106, 107.

### A.   Legal Standard

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat.*

---

[4] The consolidation order does not affect magistrate judge jurisdiction because all of the parties to 23-2932 are also parties to 22-763 and filed consents in both cases. *See* nn. 2 & 3, above.
[5] This and all further ECF citations are to 22-763 unless otherwise indicated.

3

1  *Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  In addition, the Ninth Circuit "has adopted and
2  applied a version of the sliding scale approach under which a preliminary injunction could issue
3  where the likelihood of success is such that serious questions going to the merits were raised and
4  the balance of hardships tips sharply in plaintiff's favor." *All. for the Wild Rockies v. Cottrell*, 632
5  F.3d 1127, 1131 (9th Cir. 2011) (cleaned up).

**B.  Analysis**

    **1.  Likelihood of Success on the Merits**

Plaintiff's motion asserts three grounds on the merits for why a preliminary injunction should issue.  First, Lansdown argues that the notice of default states the incorrect amount owed or that she is not in default at all.  ECF No. 94-4 at 2.  Second, she argues that the mortgage servicer did not satisfy the procedural requirements in the California Civil Code for recording a notice of default.  ECF No. 94-4 at 10.  Third, she argues that Defendants have violated the FDCPA and the RFDCPA.  ECF No. 94-4 at 12.

First, let's review the evidence that is before the Court on this motion.  There is a declaration from Plaintiff's counsel at ECF No. 94-3.  The declaration demonstrates that he gave Defendants notice that he would seek a TRO and a preliminary injunction.  This declaration does not contain any evidence relating to merits issues.  The only evidence concerning the merits that was submitted in support of the preliminary injunction motion is Plaintiff's declaration at ECF No. 94-5.  The declaration cites Exhibits 1-17, none of which are attached.  However, the Court can see that the same exhibits were attached to her nearly identical June 15, 2023 declaration in support of her TRO application in 23-2932 (at 23-2932 ECF No. 9).  Accordingly, as the Court has been able to locate the cited exhibits, it will consider them.[6]

In their December 6, 2023 submission, Defendants request judicial notice of several pleadings (Exhibits A-K).  The Court will consider these pleadings, but does not consider pleadings to be evidence of factual assertions contained within them.  Defendants submit as exhibits two emails between counsel (ECF No. 98, Exhibits L and M) concerning the date of the

---

[6] Citations below to Exhibits 1-17 mean these exhibits.

4

1  trustees sale. In their December 8, 2023 submission, Defendants provide the reinstatement
2  balance for Plaintiff's loan (ECF No. 101, Ex. N). In their December 13, 2023 submission,
3  Defendants submit a declaration from Shellpoint addressing merits issues. ECF No. 107.
4  Defendants also request judicial notice of the December 22, 2022 notice of default (Exhibit O)
5  recorded in Sonoma County records. ECF No. 107-1. The Court will consider Exhibit O.[7]

6  Now, let's evaluate the merits of the three reasons why Plaintiff says she is likely to
7  succeed on the merits.

### a. Does She Really Owe This Much Money?

9  Between her briefs and her declaration, Lansdown offers essentially four theories about
10 why she is not in default, or why the amount she owes has been inflated. Let's go through them.
11 First, Lansdown states in her declaration (ECF No. 94-5) that she was the victim of
12 predatory lending in violation of 15 U.S.C. § 1639(h) and California Civil Code § 1920. She does
13 not appear to argue that this is a basis for a preliminary injunction in any of her legal briefs in
14 support of the motion (ECF Nos. 94-4, 99, 102, 106), but in the interest of being thorough, the
15 Court will address it anyway. Paragraph 6 of her declaration states that the Full Spectrum loan
16 officer (Full Spectrum was the original lender, *see* Exhibit 1) inflated her actual income from
17 $1,628 per month to approximately $9,500 per month for purposes of qualifying her for the loan.
18 She says that under the loan, her monthly mortgage payment was $2,622.05, which she could
19 never have paid. However, the deed of trust (Exhibit 1) states that Lansdown and her then-
20 husband were both borrowers on the mortgage. There is no evidence before the Court on this
21 motion concerning her then-husband's income at the time, so the Court cannot determine whether
22 the monthly mortgage payment in fact exceeded what the couple could have been expected to pay.
23 The Court also observes that 15 U.S.C. § 1639(h) seems to prohibit "a pattern or practice" of
24 extending credit without regard to the consumers' ability to repay it, and Lansdown does not cite
25 legal authority to show that one instance of doing this is a pattern or practice; nor does she submit
26 evidence that Full Spectrum did this on multiple occasions. California Civil Code § 1920(a) states

---

[7] Citations below to Exhibits A-O mean these exhibits.

that "[s]tandards for the adjustment of interest rates or monthly payments shall consider factors which can reasonably be deemed to affect the ability of borrowers to meet their mortgage obligations." That doesn't seem on point here, as Lansdown is not complaining about the standards for the adjustment of interest rates or monthly payments. Nor does the rest of section 1920 seem relevant to her complaint. Accordingly, on this first theory, Lansdown has neither established a probability of success nor raised serious questions going to the merits.

Her second theory is that BANA, which succeeded to the loan, told her in November 2009 and January 2010 that to qualify for a loan modification she needed to be behind in her mortgage payments, when in fact BANA could not modify her loan at all. ECF No. 94-5 ¶¶ 8-10, 19 & Exhibit 10. She states further that a BANA agent told her over the phone that she had been accepted into the homeowner retention program, when that was not true either. *Id*. ¶ 10. The idea is that she relied on BANA's advice not to make payments on her mortgage, so she should not be on the hook for the resulting fees and charges for default-related services. *Id*. ¶ 15. She runs with this theory as far as possible, arguing that *all* of the interest, late fees and foreclosure-related costs assessed to date are improper because of this bad advice she received in November 2009 and January 2010 (*id*. ¶ 1(a), (d)).

Defendants do not have an evidentiary response to Lansdown's sworn statements that BANA advised her to fall behind in her mortgage payments. Legally, they argue that "[t]he idea that hearing a representative recommend you stop making payments, even if true, is the same as preventing someone from making payments or otherwise rejecting tender is nonsensical and disingenuous." ECF No. 107-2 at 3. Of course Defendants are correct that Lansdown's declaration does not establish that BANA prevented her from making payments.

The Court thinks that on this second theory, Lansdown has raised serious questions going to the merits concerning whether some of the fees and charges for default-related services are improper. Paragraph 14 of the deed of trust states that "[l]ender may charge Borrower fees for services performed in connection with Borrower's default . . ." Exhibit 1. The Court thinks this provision contains an implied covenant of good faith and fair dealing that the lender will not induce or encourage that default. Lansdown's declaration arguably establishes that BANA did

6

that. The Court says "arguably" because there is room to wonder about causation, given that paragraph 6 of her declaration asserts she could never have made the monthly mortgage payments, paragraph 7 indicates there were defaults recorded in 2002 and 2003, and paragraph 9 states that when she contacted BANA in November 2009, she was already experiencing difficulty making mortgage payments. Further, there is also a fair question about how long it was reasonable to rely on BANA's advice. *See* ECF No. 94-5 ¶¶ 17-19. The Court does not here determine exactly how long it was reasonable for Lansdown to rely on BANA's advice. However, the Court thinks that such reliance likely ceased being reasonable after March 2, 2012, when Lansdown states that BANA informed her that she was not eligible for a loan modification because BANA had no contractual authority to give her one. ECF No. 94-5 ¶ 19 & Exhibit 10. Lansdown states in her declaration that this letter shows that BANA should have known not to give her the advice it did. Logically, when Lansdown received that letter, she should have known the advice was wrong as well.

Lansdown's declaration also offers a third theory. She states that in December 2018, the parties entered into a Memorandum of Understanding (Exhibit 14) as part of resolving the Sonoma County action. ECF No. 94-5 ¶ 23. She states that "[o]n May 13, 2019, I sent in the executed Loan Modification Agreement and payments in the amount of $11,594.92 for the months of February through May, which Bayview failed to credit to my account." *Id*. ¶ 24. She also states that Bayview refused "some" of the payments she made in 2019. *Id*. ¶¶ 24-25.

Here, Defendants do have an evidentiary response. They submit a declaration from Shellpoint stating that according to Shellpoint's records, "Plaintiff made payments to Bayview Loan Servicing in December of 2018 and early 2019 based on settlement documents which contemplate a loan modification." ECF No. 107 ¶ 3. Further, "Plaintiff failed to comply with the Modification and other settlement documents by failing to return the fully executed 2019 Modification within the time frame required." *Id*. ¶ 4. "The payments that Plaintiff did send in were maintained in a suspense account pending Plaintiff's compliance with the settlement terms but since she never performed those terms, the payments were refunded and never applied to her loan balance." *Id*. ¶ 5.

7

The Memorandum of Understanding does say that the loan modification was not final until it was executed by the parties. It says that Bayview would prepare it, and that Lansdown's deadline to return it was January 31, 2019. Exhibit 14. Lansdown states in her declaration that she returned the executed loan modification on May 13, 2019, which is after the deadline. ECF No. 94-5 ¶ 24. Exhibit 15 is the May 13, 2019 correspondence providing the executed loan modification. Exhibit 15 also contains payment forms dated February 1, March 1 and April 1, 2019, all prominently labeled "modification payment."

The Court finds that Lansdown's third theory is not likely to succeed on the merits and does not present serious questions on the merits. The Memorandum of Understanding states on its face that the executed loan modification was due on January 31, 2019. Lansdown states in her declaration that she missed the deadline by about two and a half months. She offers no explanation for that. As noted, Defendants have submitted a declaration stating that Lansdown did not timely submit the executed loan modification and that is why Bayview returned the payments. Because the payment forms were prominently labeled "modification payment," Lansdown's payments were exactly equal to the monthly modification payment amount of $2,898.73 (*see* ECF No. 94-5 ¶ 24 (stating that she sent in payments for February through May of $11,594.92, which is exactly four times $2,898.73)), and the modification was not submitted in time, the Court is unable to fault Bayview for returning the payments. Had it kept those payments, Lansdown would undoubtedly argue that Bayview had impliedly accepted the untimely loan modification.

Lansdown also advances a fourth theory, which is a little harder to grasp. Her fourth theory seems to be that her expression of willingness in January 2010 to make payments to bring her loan current (ECF No. 94-5 ¶ 10), combined with the payments in 2019 concerning the belated loan modification (*id*. ¶ 24) forever exempted her from having to make any more mortgage payments, or alternatively, forever barred Defendants from assessing any late fees or interest. Although the Court describes this theory last in this section of the order discussing default issues, it is actually the primary argument that Lansdown advances in her motion. Let's assume for the sake of argument that Lansdown's offer in January 2010 to become current on her loan was a valid tender that prevented foreclosure at the time. That was 13 years and 11 months ago. Since then a

1    new mortgage bill has been due each month.  She does not claim she has paid them, and as noted

2    above, her belief that she should avoid paying her mortgage in order to qualify for a loan

3    modification likely ceased being reasonable by March 2012.

4           The Court has discussed the 2019 payments above.  The evidence shows that these were

5    not payments on her existing loan but were instead payments under an untimely submitted loan

6    modification.  But leaving that issue aside, and even if we treated the 2019 payments as a valid

7    tender, her counsel reported at the hearing that Lansdown has not made a mortgage payment in

8    more than four years.  Of course she is in default.

9           The closest Lansdown comes to explaining her fourth theory is not in any of her legal

10   briefs, but in paragraph 37 of her declaration:  "In order for contract performance to resume" –

11   meaning, for her to be obligated to make payments on her mortgage – "it was necessary for the

12   servicers to cure their material failure to perform, by removing those amounts not authorized by

13   the loan contract or applicable law, and to which defendants are not entitled."  The idea is that

14   starting in January 2010 her debt was overstated because BANA had improperly assessed fees for

15   her being in default (and the Court thinks she has raised serious questions going to the merits on

16   this point, at least for a period of time), and then again in 2019 her debt was overstated because

17   Bayview rejected some of her payments (the Court disagrees with that, as discussed above).  Her

18   argument is that as long as her debt is overstated in her account balance, she is relieved of any

19   obligation to make any mortgage payments.  She cites no legal authority in support of that

20   incredible argument, which would amount to a windfall for borrowers whose lenders make a small

21   mistake.  And, dear reader, do not be confused:  In her motion for a preliminary injunction,

22   Lansdown is absolutely asking the Court to award her that windfall and let her continue living in

23   her home while she continues to stiff the bank, as she has been doing – without dispute – for

24   years.

### b.    Did Defendants Comply with the California Civil Code?

26          California Civil Code section 2923.55(c) says:  "A notice of default recorded pursuant to

27   Section 2924 shall include a declaration that the mortgage servicer has contacted the borrower, has

28   tried with due diligence to contact the borrower as required by this section, or that no contact was

1   required because the individual did not meet the definition of 'borrower' pursuant to subdivision

2   (c) of Section 2920.5."

3         Lansdown provides the Court with a three-page December 2022 notice of default that is

4   missing the required declaration.  Exhibit 2.  But there is something wrong with Exhibit 2.  The

5   top of the first page says "page 1 of 5," but Exhibit 2 is only three pages.  Also, the third page of

6   Exhibit 2 says:  "The loan servicer has fulfilled its obligation under either California Civil Code

7   section 2923.5 or 2923.55 (as applicable).  Please see Declaration of Compliance attached hereto."

8   That sure sounds like there was supposed to be an attached declaration of compliance, but there

9   isn't one in Exhibit 2.

10         Defendants' Exhibit O clears up this problem.  It is also the December 2022 notice of

11   default.  Page one of the document makes clear it is on file with the County of Sonoma.  The first

12   page says "page 1 of 5," the second page says "page 2 of 5," the third page says "page 3 of 5," the

13   fourth page says "page 4 of 5," the fifth page says "page 5 of 5," and the document is indeed five

14   pages long.  And the last two pages are the declaration of compliance required by California Civil

15   Code section 2923.55(c).  So, Lansdown's argument that Defendants did not comply with the

16   California Civil Code falls flat.

17         **c.**      **Is This Unfair Debt Collection?**

18         Now let's turn to the FDCPA and RFDCPA.  Defendants are right that in 22-763, the

19   Court previously dismissed both claims as time-barred.  ECF No. 39 at 8-10.  But the new

20   Complaint in 23-2932 alleges that Shellpoint recorded an inaccurate notice of default on

21   December 22, 2022 (23-2932 ECF No. 1 ¶ 19), and Lansdown filed that lawsuit on June 14, 2023,

22   so she has timely FDCPA and RFDCPA claims against Shellpoint.  Defendants argue that

23   "Plaintiff has provided no actual evidence to support her contention that the Notice of Default was

24   defective" (ECF No. 101 at 3), but the Court finds that her unfair debt collection argument merges

25   with her first argument that Defendants are trying to collect on more debt than Lansdown owes.

26   On the merits, if Lansdown prevails on her argument that BANA improperly charged her fees

27   related to default after advising her to default, then the December 2022 notice of default likely is a

28   violation of 15 U.S.C. § 1692e(2)(A) and 15 U.S.C. § 1692f(1), which would seem also to make it

a violation of California Civil Code § 1788.17.

####    d.    Conclusion Regarding Likelihood of Success on the Merits

For the reasons explained above, Lansdown has raised serious questions going to the merits on whether Defendants are trying to recover more debt than she owes and, for the same reason, whether the December 2022 notice of default violates the FDCPA and RFDCPA.

###   2.    Irreparable Harm

Lansdown has also established that she will suffer irreparable harm if a preliminary injunction is denied. "[T]he property at issue is unique" because it is her home. *Sundance Land Corp. v. Comty. First Federal Sav. & Loan Ass'n*, 840 F.2d 653, 661 (9th Cir. 1988).

###   3.    Balance of Equities

"The assignment of weight to particular harms is a matter for district courts to decide." *Earth Island Inst. v. Carlton*, 626 F.3d 462, 475 (9th Cir. 2010). Here, the harm to Lansdown if the foreclosure were to happen is the loss of her home. The harm to Defendants is the inability to foreclose while the litigation remains pending. Superficially, it would seem that Lansdown has the more significant harm, but the Court thinks the analysis must go deeper.

On the one hand, Lansdown has not made any payments on her mortgage in more than four years. As discussed above, she is taking the position that her expression of willingness to make her loan current in January 2010 and her submission of several modification payments on an untimely loan modification in 2019 have completely liberated her from any obligation to pay her mortgage. That position is ridiculous. The only claim that the Court has found raises serious questions based on the evidence submitted in connection with the motion for a preliminary injunction is the one challenging the default-related fees BANA charged after encouraging her to default. This claim is limited in time and has causation problems. But even if Lansdown wins it, that doesn't mean she is entitled to keep her home. Rather, she has a claim for damages for overcollection on a debt. Enjoining the sale gives Lansdown more and better preliminary relief than any final relief she would be entitled to if she wins at trial. A preliminary injunction would be an undeserved windfall.

On the other hand, Defendants will eventually get their money. The December 2022 notice

of default states that Lansdown owed $499,440.85, but paragraph 1 of her declaration states that her house is worth approximately $1.3 million. Given that the debt is secured by an asset that is worth so much more than the debt, there does not seem to be any real prospect that Defendants will not eventually be able to recover the debt. If the Court issued a preliminary injunction barring the sale of Lansdown's home until a trial could be had to determine with precision the exact amount she owes, Defendants would not suffer any meaningful harm – just some delay. The cost and expense of litigating that claim through trial do not count as relevant harms because denying the injunction does not avoid them.

Accordingly, the Court concludes that the balance of the equities favors neither side.

### 4. Public Interest

The public interest factor is neutral in this case. *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138-39 (9th Cir. 2009) ("When the reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties, the public interest will be at most a neutral factor in the analysis rather than one that favors granting or denying the preliminary injunction.") (cleaned up).

### 5. Conclusion Regarding Whether to Issue a Preliminary Injunction

Lansdown has established serious questions going to the merits, she will suffer irreparable harm if a preliminary injunction does not issue, the balance of the equities favors neither side, and the public interest is neutral. So, should the Court issue an injunction?

The Court thinks not. In the absence of an injunction, Shellpoint will presumably proceed with the sale of Lansdown's home. If she prevails on her claim that BANA should not have charged her fees related to default when it encouraged her to default, her remedy is monetary damages. (And, indeed, this remedy is embraced in her second claim for relief in 22-763, which alleges that Shellpoint violated the deed of trust by overcharging her, a claim for which she seeks monetary damages. TAC ¶ 61 & Prayer for Relief.) A preliminary injunction is not needed to protect the remedy available to Lansdown if she wins at trial. And there is no other reason to protect the status quo. Although Lansdown has raised a serious question that her debt may be somewhat overstated, she has come nowhere close to showing that a sale should not proceed. Again, a major problem with this motion for a preliminary injunction is that Lansdown is seeking

preliminary relief out of all proportion to the final relief she would be entitled to if she prevailed at trial.

### III.   CONCLUSION

Plaintiff's motion for a preliminary injunction is **DENIED**.

**IT IS SO ORDERED.**

Dated: December 14, 2023

THOMAS S. HIXSON
United States Magistrate Judge

13